UNITED STATES, Appellant,

v.

Jerry Levaughn HARRIS, 424 74 8023,
Boatswain's Mate Second Class (E–5)
U.S. Navy, Appellee.

Misc. Dkt. No. 85–04.

U.S. Navy-Marine Corps Court of
Military Review.

Decided 7 June 1985.

MAJ Michael E. Canode, USMC, Appellate Defense Counsel.

LT Richard F. McManus, JAGC, USNR, Appellate Defense Counsel.

MAJ E.D. Clark, USMC, Appellate Government Counsel.

GREGORY, Senior Judge:

Pursuant to Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862, and Rule for Court-Martial (R.C.M.) 908(b), the Government has filed an appeal requesting this Court to reverse the ruling of the military judge below which dismissed the charges because Petty Officer Harris had not been brought to trial within the 120-day period specified by R.C.M. 707(a). The Government asserts that the military judge erred as a matter of law in determining that the Government was not legally

ready to go to trial before expiration of the 120-day period and that the Government was accountable for the entire 122 days which elapsed after Petty Officer Harris was notified of the preferral of charges.

In brief, the record of trial shows that charges were preferred in this case, and Petty Officer Harris was so notified, on 20 September 1984. The charges were referred to a special court-martial on 21 September 1984. The first Article 39(a), 10 U.S.C. § 839(a), session was called to order 122 days later on 21 January 1985. In the interim, there were protracted negotiations toward a pretrial agreement. The defense initiated the negotiations in early November 1984 with a proposed agreement. The convening authority responded with a counter-proposal on 10 December 1984. The defense countered this proposal with a revised offer of its own on 19 December 1984 and suggested that the case be tried during the second week of January. The revised offer of the defense was accepted on 7 January 1985. The convening authority, Commanding Officer, USS COMTE DE GRASSE (DD–974), was deployed during portions of these negotiations and communications by telephone and naval message were necessary in some instances. In making his ruling, the military judge found it significant that one of the prosecution witnesses and certain physical evidence were not present in Norfolk on the day of trial and that the charges were not served on Petty Officer Harris until the day of trial. (Prior to trial, the defense had assured trial counsel that it would be willing to waive the three-day waiting period specified in Article 35, UCMJ), 10 U.S.C. § 835.

■ Although we are restricted by Article 62, UCMJ, to acting only on matters of law, this proscription does not prevent us from examining the findings of fact by the military judge to ensure that they are based on matters of record and are correct as a matter of law. In this regard, we experience some difficulty with the finding of the military judge that the Government was not ready for trial because the charges had not been served until the day of trial

and not all of the witnesses and evidence were immediately available. At a pretrial conference pursuant to R.C.M. 802, the military judge had been made aware that the defense would not insist on the three-day waiting period after service of charges and that it had been contemplated for some time that the case would be resolved under a guilty plea pursuant to a pretrial agreement. Whether we agree or disagree that the Government was ready for trial within the 120-day period is of little consequence, however, because the Government still did not bring the case to trial until the 122nd day.

The real crux of this appeal is whether the Government was accountable for the entire 122-day delay. R.C.M. 707 allows for certain exclusions from Government accountability. The possible exclusions in this case are those associated with (1) any period of delay resulting from a delay in a proceeding or a continuance in the court-martial granted at the request or with the consent of the defense (R.C.M. 707(c)(3)), and (2) any other period of delay for good cause, including unusual operational requirements and military exigencies (R.C.M. 707(c)(8)). In this regard, we are referring to the delays associated with the negotiations toward a pretrial agreement and the less facile communications with the convening authority while deployed.

■ We concur in the ruling of the military judge that there was no period of excludable defense delay under R.C.M. 707(c)(3) during the pretrial agreement negotiations which lasted from early November 1984 to 7 January 1985. The military judge had found that there were no express requests for or consents to delay by the defense (R. 70), and, in fact, trial counsel conceded this point (R. 21). In addition, we do not believe that pretrial agreement negotiations should be regarded as an "implied" request or consent to delay. Appellate defense counsel aptly analogizes pretrial agreement negotiations to situations where an accused requests an administrative discharge in lieu of court-martial when charges are pending. It has long been

recognized that any delay caused by an accused's request for administrative discharge is not defense generated delay. *See United States v. Fernandez*, 48 C.M.R. 460 (NCMR 1974). The rationale, that requests for administrative discharge in lieu of court-martial are a "normal incident" of pretrial military justice, appears equally applicable to pretrial agreement negotiations.[1] This is considered even more true since, far from being a cause for delay, an offer to plead guilty is designed to speed up the court-martial process and the convening authority has sole discretion to accept or reject pretrial agreement offers. R.C.M. 705(d)(4).

■ We also concur in the ruling of the military judge that the deployments of the convening authority did not fall into the category of "delay for good cause" set forth in R.C.M. 707(c)(8). As recently noted by this Court in *United States v. Kuelker*, 20 M.J. 715 (NMCMR 1985), the nature of the delay included in R.C.M. 707(c)(8) is well-defined by the illustrations provided therein, i.e., *"unusual* operating requirements and military *exigencies."* (Emphasis added). The record of trial in this case provides no indication that the deployments of the convening authority involved any "unusual operating requirements or military exigencies" which contributed to a delay in completion of the pretrial agreement negotiations. Even beyond the circumstances of the deployments, the record of trial establishes that Petty Officer Harris had been transferred to a shore command as early as August 1984 to await disciplinary action (R. 67), no evidence necessary to prove the case was aboard the ship (R. 73), and the ship was in port from 20 December 1984 on (R. 68).

■ In view of the foregoing, we find that the delay in bringing Petty Officer Harris to trial exceeded the 120-day limit specified in R.C.M. 707(a) and that no ex-

clusion in R.C.M. 707(c) is applicable to reduce that delay. Accordingly, the Government motion to reverse the ruling of the military judge dismissing the charges in accordance with R.C.M. 707(e) is denied.

Judge MITCHELL and Judge BARR concur.

---

**1.** This general rule that pretrial agreement negotiations are ordinarily a "normal incident" of pretrial military justice and, therefore, not defense generated delay would necessarily be subject to a proviso that there be no indication of

an "eleventh hour" submission of a pretrial agreement designed to create an issue of lack of speedy trial or other types of "gamesmanship," such as we criticized in *United States v. Cherok*, 19 M.J. 559 (NMCMR 1984).