UNITED STATES, Appellant,

v.

Marvin L. LILLY, II, 442 76 6339, Private First Class (E–2), U.S. Marine Corps, Appellee.

Misc. Docket No. 86–01.

U.S. Navy-Marine Corps Court of Military Review.

9 April 1986.

LCDR JOHN B. HOLT, JAGC, USN, Appellate Government Counsel.

LCDR JAMES J. QUIGLEY, JAGC, USN, Appellate Defense Counsel.

LT DANIEL D. DOWNING, JAGC, USNR, Appellate Defense Counsel.

LT CHRISTINE M. HAYES, JAGC, USNR, Appellate Defense Counsel.

MITCHELL, Senior Judge:

On 6 December 1985, the accused was arraigned before a general court-martial, in Hawaii, on a set of original charges and a set of additional charges, all but one drug abuse-related, which had been referred to trial on 19 April 1985. Following a lengthy unauthorized absence by the accused, three additional charges (three desertions, an escape from confinement, an escape from custody and a possession of marijuana) were preferred against the accused on 4 November 1985 and referred to trial with the original charges on 25 November 1985. At the 6 December 1985 arraignment the accused moved to dismiss the first set of offenses on the grounds of denial of speedy trial (the evidence doesn't show whether these charges had been withdrawn while the accused was AWOL). The military judge granted the motion, the Government appeals. We reverse the military judge and remand for further proceedings. At issue is the meaning of Rule for Courts-Martial (R.C.M.) 707.

The essential chronology of this case is as follows: ("Article" refers to the cited portion of the Uniform Code of Military Justice)

| | |
|---|---|
| 15 January 1985 | Accused placed in pretrial confinement. |
| 21 January 1985 | Accused released from pretrial confinement but placed on pretrial restriction. |
| 5 February 1985 | Charges I and II preferred. |
| 7 February 1985 | Accused notified of preferral of Charges I and II. |
| 4 March 1985 | Defense counsel requested exculpatory polygraph examination for accused. |
| 5 March 1985 | Trial counsel forwarded polygraph request to Naval Investigative Service Resident Agency, Kaneohe Bay, Hawaii. |
| 14 March 1985 | Additional Charges I and II preferred. |
| 15 March 1985 | Accused notified of preferral of Additional Charges I and II. |
| 18 March 1985 | Article 32 Investigation into Charges directed by Commanding Officer, Brigade Service Support Group (CO, BSSG). |
| 20 March 1985 | Article 32 Investigation convened, but continued at Government request. |
| 21 March 1985 | Accused administered exculpatory polygraph. |
| 25 March 1985 | Article 32 Investigation reconvened and concluded. |
| 11 April 1985 | Charges forwarded for disposition by CO, BSSG, to general court-martial convening authority. |
| 12 April 1985 | Case docketed for trial on 25 April 1985. |
| 19 April 1985 | Charges referred to a general court-martial (Charge I, Charge II, Additional Charge I, and Additional Charge II). |
| 22 April 1985 | Accused commences first period of unauthorized absence. |
| 25 June 1985 | Accused arrested by civil authorities in Las Vegas, Nevada. |
| 26 June 1985 | Civil authorities turn accused over to U.S. Air Force security police from Nellis Air Force Base, Nevada. |
| 27 June 1985 | Accused commences second period of unauthorized absence while at U.S. Air Force Hospital, Nellis AFB, Nevada. |
| 20 September 1985 | Accused taken into custody by civil authorities in Las Vegas, Nevada, and turned over to U.S. Air Force security police, Nellis AFB, Nevada. |
| 26 September 1985 | Accused returned to U.S. Marine Corps and confined at Joint Armed Forces Confinement Facility, Naval Station, Pearl Harbor, Hawaii. |
| 2 October 1985 | Initial review officer hearing for continued pretrial confinement held at Legal Services Center. |
| 21 October 1985 | Request for legal services submitted by CO, BSSG (for initiation of Court-Martial action on new offenses). |
| 28 October 1985 | Accused escapes with another prisoner from Pearl Harbor Confinement facility and is re-apprehended by military authorities later the same day. Defense submitted request for witnesses located at Nellis AFB, Nevada. |
| 4 November 1985 | Additional Charges III, IV, and V preferred. CO, BSSG, directs Article 32 Investigation on most recent additional charges. New government counsel appointed. |

| | |
|---|---|
| 5 November 1985 | Accused notified of preferral of Additional Charges III, IV, and V. Article 32 Investigation convened and continued at government request. |
| 14 November 1985 | Article 32 Investigation scheduled to reconvene. Accused waives pretrial investigation. |
| 21 November 1985 | Original and all additional charges forwarded for disposition by CO, BSSG. |
| 25 November 1985 | Original and all additional charges referred to general court-martial convened 19 April 1985. Accused signs pretrial agreement and submits it to GCM convening authority. |
| 3 December 1985 | Convening authority signs pretrial agreement. |
| 4 December 1985 | Government served with motion to dismiss for lack of speedy trial. |
| 6 December 1985 | Date of trial. |

No demand for speedy trial was made by the accused.

In pertinent part R.C.M. 707 provides as follows:

(a) *In General.* The accused shall be brought to trial within 120 days after notice to the accused of preferral of charges under R.C.M. 308 or the imposition of restraint under R.C.M. 304, whichever is earlier.

\* \* \* \* \* \*

(b)(2) *Inception.* If charges are dismissed, if a mistrial is granted, or—when no charges are pending—if the accused is released from pretrial restraint for a significant period, the time under this rule shall run only from the date on which charges or restraint are reinstituted.

\* \* \* \* \* \*

(b)(4) *Multiple Charges.* When charges are preferred at different times, the inception for each shall be determined from the date on which the accused was notified of preferral or on which restraint was imposed on the basis of that offense.

\* \* \* \* \* \*

(c) *Exclusions.* The following periods shall be excluded when determining whether the period in subsection (a) of this rule has run—

\* \* \* \* \* \*

(6) any period of delay resulting from the absence or unavailability of the accused.

\* \* \* \* \* \*

(8) any other period of delay for good cause, including unusual operational requirements and military exigencies.

\* \* \* \* \* \*

(e) *Remedy.* Failure to comply with this rule shall result in dismissal of the affected charges upon timely motion by the accused.

R.C.M. 707 is predicated upon *ABA Standards, Speedy Trial 1978* (ABA Standard). App. 21, Analysis, *Manual for Courts-Martial, 1984* (MCM, 1984). It also generally tracks the civilian federal rule, albeit with significant differences. *See* 18 U.S.C. § 3161, *et seq.* It is a legislative standard and not one of constitutional magnitude. In transposing a civilian standard into the military justice system due deference should be afforded the essential differences in the two environments. Hopefully, this is accomplished in the drafting and enacting stage. If not, that task falls upon the military courts interpreting the rule. R.C.M. 102(b), in recognition of this judicial role, directs that all of the rules shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay. This rule plainly contemplates that the Rules are to be construed in their *military* contexts. Pertinently, we think it is wise to bear in mind that in the Naval Service and, perhaps, the services in general, the movement of cases to trial is not controlled in the same way that civilian cases are controlled. Generally, criminal cases in the civilian courts are processed through and filed in the office of a district attorney. The docket is controlled by a permanently sitting judiciary. If an accused absents himself from the trial, the case remains under the control of the district attorney and the permanent judiciary, unless a dismissal is obtained by the district attorney. When the appellant comes back into the system, by arrest or otherwise, the district attorney's office and the

judiciary are the entities with which an accused comes into contact at an early stage. This is not the case in the Naval Service. Legal services, including prosecution and defense functions, are provided by a staff judge advocate office or a centralized legal service support unit. The authority to prosecute and the duty to account for the military population are vested in commanding officers. The military judiciary sits only after referral, unless otherwise provided by regulation. It is customary that when an accused absents himself following referral of the case to a court, the legal service support unit or staff judge advocate office places the original charge sheet and supporting documents in the service record and returns the record to the immediate commanding officer possessed of personnel accounting responsibility. This is done because local and computerized entries must be made to report the accused's status to proper higher authority, to effect appropriate pay actions and because reverse personnel accounting procedures must be followed and accurate information, often from remote sources, must be obtained when the accused returns at some unknown future time. It is the command and not the legal system to which the accused comes following an absence from court. The legal system, in interpreting Rule 707, must recognize the burden and the legitimacy of the personnel accounting responsibilities as well as the legal system's secondary position in the chain of events. Court-Martial is not the only game in town, nor the accused the only person for whom a given commander is responsible.

We also perceive that the military justice system, in some ways, operates more informally than the civilian system. For example, a convening authority has the powers of withdrawal and dismissal of charges. There is no requirement that this action be formally done or memorialized in writing. The judiciary need not necessarily be involved in the action. So too, the manner in which trial dates are set and many notices given. Informality, while admirable in terms of R.C.M. 102, usually leaves a record void regarding the who, what, where, when and why of the action. Civilian procedures, more intimately tied to the judiciary, generally maintain a more formal record of such things. Thus, practitioners, legal administrators and judges must analyze civilian rooted military law principles not only in the light of the realities of obvious operational commitments unknown in the civilian sector, but also from the standpoint of whether the adopted rule requires any changes in the way the armed forces conducts its legal business. Likewise differences in policy, applicable in civilian and military societies, both bearing upon and related to, the application of a given rule are important considerations. It may well be that in adopting R.C.M. 707 in such a close parallel with its civilian root, the judiciary may have to be involved to a greater degree in the heretofore more informal practices. More formal legal administrative procedure than was heretofore the case may have to be followed, if the literal wording of the Rule is to be followed. Indeed the wording of many of the exclusions seems to contemplate a ruling by the military judge or pretrial investigating officer granting delay. Essential though the foregoing considerations are to the analysis of R.C.M. 707, they do not establish any license to deal violently with the plain wording or the obvious scheme of the Rule. *Cf. United States v. Leonard,* 21 M.J. 67, 69 (C.M.A.1985); *United States v. Gray,* 21 M.J. 1020 (N.M.C.M.R.1986).

The structure of R.C.M. 707, while simple and straight forward, does not explicitly provide for all situations. Rather, within the construct, the appropriate provisions should be applied in a fashion which serves the principle underlying the Rule. R.C.M. 707 provides a flexible structure to balance the right of an accused to a speedy disposition of charges and the interest of the Government in effective law enforcement. MCM, 1984; App. 21, Analysis at A21–36; *ABA Standard* at 12–21, commentary. *See United States v. Jones,* 21 M.J. 819 (N.M.C.M.R.1985). The balancing must

logically occur in the context of the facts of the particular case. The rule sets a limit of 120 days after a triggering event within which to try an accused. Certain events which occur during the course of progress toward trial restart the 120 day clock. Other similarly occurring events do not restart the clock but are subtracted from government's accountability for the total number of days consumed in getting to trial. In general these exclusions are not "but-for-the-event-trial-would-have-occurred-sooner" in concept—that is, the days excluded are not merely those excludable periods during which the date for trial would otherwise have arrived. MCM, 1984, App. 21 at A21–37. *United States v. Novack,* 715 F.2d 810 (3d Cir.1983), *cert. denied,* 465 U.S. 1030, 104 S.C. 1293, 79 L.Ed.2d 694 (1984); *United States v. Jones, supra; ABA Standard* § 12–21, Commentary at 12–16. The specific exclusions are really events for which good cause is presumed. Good cause and government diligence underly all of the exclusions and are the guiding principles. We think the exclusions are designed to deal flexibly with those events which are not normally incident to a constant movement of the government to trial. Logically, this is why all conceivable interrupting events are not covered by a specific exclusion and also why subsection (c)(8) of the Rule is flexible—that is, specific events qualify by their occurrence under the stated condition, while others qualify only if good cause, unusual

operational requirements or military exigence is shown.[1] Different offenses charged in the same case can have different trigger dates and, hence, different R.C.M. 707 ramifications, though there is no indication that this feature of the Rule is to be absolutely controlling.

■ Exclusion (6) specifically affords a basis for excluding periods of time resulting from the absence or unavailability of the accused. The exclusion is somewhat ambiguously stated. By its plain wording it is plainly not limited to authorized absence. *ABA Standard,* Commentary § 12–2.3(e). Concerning unauthorized absence, it is not clear whether the Rule contemplates excluding only the period from inception to the return of the accused to military control, with any additional delay having to be justified under some other exclusion; excluding the period from inception to the return of the appellant to military control at the place from which he absented himself or the place to which reassigned and time reasonably required to revise the charges, with any additional delay having to be justified under some other exclusion; or excluding the period of actual absence plus such other time as is deemed to be reasonably resultant from the absence, including the trial of new offenses, bearing in mind the principles of government diligence and good cause which underly all of the exclusions. We think that, in context,

---

1. *United States v. Harris,* 20 M.J. 795 (N.M.C.M.R.1985), cannot be read *contra.* The *Harris* court, in commenting upon a claimed exclusion for the time the convening authority was deployed at sea and the time consumed in pretrial negotiations as good cause shown, was merely stating that there must be a nexus between the event and the trial, other than the event being normally incident to the prosecution of a criminal case. Thus, in *Harris* a showing that a convening authority's deployment, which did not involve the accused, witnesses, court members or counsel and which did not otherwise affect the normal course of the government's movement to trial, did not establish good cause for delay. Nor did routine pretrial negotiations. *Harris* and *United States v. Kuelker,* 20 M.J. 715 (N.M.C.M.R.1985), are consistent in this regard. The court in *Kuelker* found that in the circumstances of that case a delay caused by difficul-

ties in gathering certain evidence from another government agency was not shown to be an event which was not normally incident to the government's continuous movement to trial so as to constitute good cause shown. *Kuelker,* 20 M.J. at 716. We do not read in *Kuelker* the word "routine" to mean that an event not normally incident to the prosecution of criminal cases in general cannot rather routinely occur. For example, a ship's deployment which involves witnesses, accused and court members rather routinely occurs in the Navy, but can hardly be viewed as an event normally incident to the prosecution of court-martial cases in general. R.C.M. 707 states a guideline applicable to *all* armed services, meaning that interrupting events depend upon nexus to prosecution and their character for exclusion, not on mere frequency of occurrence in one service or another.

the second scheme is most closely related to the principle of construction set forth in R.C.M. 102(b). That is, the plain language of exclusion (6) contemplates more than just the time of absence to the time of return to military control, and for good reasons. First, there are many ways in which events following an absence can affect any rigidly presumed scenario. Second the government in an equity sense should at least be put back to the place it was prior to the unauthorized absence. The time reasonably taken to reprocess the case to trial is a necessary ingredient of being made whole. Third, since good cause and government diligence underly all of the exclusions, there is no need to intellectually jump to another exclusion (presumably exclusion (8)—good cause) in order to determine whether delay incident to returning the accused to his unit was reasonable. It matters little which intellectual drawer is opened. Since the underlying principles, are the same, the exclusions, if reasonably applied, will produce the same result. We hold that exclusion (6) contemplates the period of actual absence plus the time it takes to return the accused to his command, or the command to which reassigned, plus the time it takes to join or rejoin him to the command and process the original charges back to trial. The latter two factors are subject to the general limitations of government diligence and undue prejudice to the accused.

 Exclusion (8) of R.C.M. 707, permits exclusion for any period of delay for good cause, unusual operating requirements and military exigencies. Good cause at first blush is an ethereal concept as, for example, in *Harris, supra,* and *Kuelker, supra,* where the Court's attempts to briefly deal with the concept led to apparent, though not actual, confusion of the concept of good cause with those of operational requirements and military exigencies. Good cause must be viewed in the context of the matter to which it relates—in this case speedy trial—and its underlying structure and purposes—in this case the balancing of the interests of speedy trial and effective law enforcement through the dis-

cretionary power of the trial judge. *ABA Standard,* Commentary § 12–1.3. We embrace the following reasoning of Judge Kennett as being consistent with the purposes and scheme of the *ABA Standards,* the Speedy Trial Act and R.C.M. 707:

> Although two situations, unusual operational requirements and military exigencies, are listed as illustrative of good cause, R.C.M. 707(c)(8) does not define the term. At a minimum, however, good cause is a less strict standard than the "extraordinary circumstances" required by R.C.M. 707(d). R.C.M. 707(c)(8) is taken from section 12–2.3 of the ABA Standards, Speedy Trial (1978), which indicates the good cause standard was developed to accommodate the discretionary power trial judges have to deal with unique situations in determining whether they affect the calculation of the time for trial. Under the ABA Standards "good cause" is distinguished from the more onerous "exceptional circumstances" standard—a standard analogous to "extraordinary circumstances." *Cf.* Uniform Code of Criminal Procedure 722(f)(11) (1974) (standard of exceptional circumstances elected over good cause standard because it emphasizes reasons for delay must be compelling). While less may be needed to satisfy the good cause requirement than extraordinary circumstances, the overriding concern that an accused receives a speedy trial imposes limitations on the breadth of the good cause standard. *United States v. Durr,* 21 M.J. 576, 578 (A.C.M.R.1985).

Judge Kennett then described the concept of the good cause exclusion as follows:

> We believe the standard of good cause contemplates a balancing test. The interest of the accused and the military in a speedy trial must be weighed against the ends of justice that may be served by a delay in trial. *See e.g.,* 18 U.S.C. § 3161(h)(8)(A) (1982). Under this formulation of the good cause standard, a two-step analysis must be conducted to determine if a time period is excludable under R.C.M. 707(c)(8). First, the event

which allegedly constitutes good cause must be analyzed to determine whether the event is of the type that may justify a delay. If so, the second inquiry is whether a nexus exists between the event and any delay in trial. *United States v. Durr*, at 578.

The good cause exclusion is manifestly not a strait jacket for the government or a tool for the oppression of an accused, as some may read it described in *Harris* and *Kuelker*. It is a rule of balance, common sense and reason to be realistically applied in its military setting. It follows that in analyzing the meaning and application of the other exclusions, which by definition constitute good cause for nonaccountability, the same analytical scheme is appropriate. The commentaries to *ABA Standards*, 12–2.1 and 12–2.3(h) manifest a preference for utilizing the specific exclusions whenever appropriate and leaving the unusual events to the good cause exclusion. This supports our view that a broad reading of "resulting from" absence exclusion (6) is the proper way to resolve accountability for delays caused by an accused's absence, with delay related to processing additional charges being resolved under exclusion (8). In other cases where new offenses are joined with the original offenses and there is no absence of the accused involved and no other exclusion is applicable, the matter of delay due to joinder should be resolved purely under the R.C.M. 707(c)(8) good cause standard.

■ Without regard to the obvious scheme set forth in R.C.M. 707 for handling the absence of an accused as an exclusion, the Government effectively urges this court to legislate into R.C.M. 707(b)(2) a provision which resets the speedy trial clock to zero when an appellant becomes an unauthorized absentee. Not only does such a proposal do violence to the plain language and structure of R.C.M. 707, it ignores the roots of the Rule. The Government places reliance upon *United States v. Brooks*, 23 U.S.C.M.A. 1, 48 C.M.R. 257 (1974); and *United States v. O'Brien*, 22 U.S.C.M.A. 557, 48 C.M.R. 42 (1973) and related cases which were born in the bygone days of yesteryear and the prophylactic rule of *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), and in which the Court of Military Appeals was writing on an essentially clean slate. R.C.M. 707 provides a specific scheme for dealing with all absences which is flexible and easy to apply, albeit not as bright-line as *Brooks* and *O'Brien*. Furthermore, there is a certain practical appeal in the rule of those cases. In *O'Brien*, the Court of Military Appeals revealed that a certain discouragement of unduly long pretrial confinement supported *Burton*.

We reach this conclusion despite our not considering the accused's initial confinement from January 19 until February 18 as being chargeable to the Government. The Government cannot be held accountable for this period; it released the accused in good faith, pending disposition of the case against him, and he promptly absented himself without leave. We encourage the elimination of unnecessary confinement and applaud the Government's apparent desire to impose no further restriction on the accused's liberty than initially appeared necessary. At the same time an accused who, once set free, immediately violates his responsibility by again absenting himself without leave is not blameless. *O'Brien*, 48 CMR at 46.

Had resetting of the clock been desired by the government which now espouses it, that same government could well have drafted it into R.C.M. 707(b)(2) or at least given some clue in the Rule, its discussion or its analysis that such was intended.[2]

---

**2.** Though we need not decide its legality at this time, had there been a formal withdrawal of charges from the court during the absence it may well have restarted the speedy trial clock. Since the accused is at liberty (AWOL) and no charges are then pending before the judiciary, there is really nothing which the law has any interest-speeding along—*See United States v. Gray, supra. United States v. Kuelker, supra,* is limited to its factual parameters and is not *contra* authority. Such a procedure seems to do little violence to the plain meaning of R.C.M. 707(b)(2), is not inconsistent with the *ABA Standard* and avoids the statute of limitations prob-

Since precedent and analysis of the Rule compel a different conclusion than that reached by the Government, we reject the contention. If a substantial modification to the Rule is judicially mandated, it should be done by the Court of Military Appeals. We do think, however, that the *Brooks* and *O'Brien* cases support the conclusion that any existing joinder of offenses policy be liberally construed in favor of allowing the government a reasonable time to join original and subsequent offenses in instances of unauthorized absence which occur prior to trial on original charges.

The *ABA Standard* § 12–2.1 commentary indicates a preference for setting forth in the statute the basic policy considerations involved in determining good cause for delay. This is done in the Federal Speedy Trial Act, *e.g.*, 18 U.S.C. § 3161(h)(8); 18 U.S.C. § 3162. Little policy guidance is set forth in R.C.M. 707. But in the MCM as a whole there is set forth some obviously relevant policy. R.C.M. 307(c)(4) gives the convening authority discretion to join all known offenses committed by an accused into one pleading.[3] R.C.M. 601(e)(2) gives the convening au-

thority discretion to refer two or more offenses charged against an accused to the same court-martial for trial and permits adding of additional charges if procedural requirements are completed prior to the time the accused is arraigned. The Rule states a preference that ordinarily all known charges should be referred to a single court-martial.[4] Article 10, UCMJ, 10 U.S.C. § 810, provides that when any person subject to the UCMJ is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the offense of which he is accused and to try him or release him. Other provisions of the UCMJ also reflect a policy of timely, but thoroughly considered action, *e.g.*, Articles 30, 32, 33, 34, 35, 40, 43, UCMJ, 10 U.S.C. §§ 830, 832–835, 840, 843. In the light of R.C.M. 102(b), these policies of thoughtful decision-making, expeditious prosecution, respect for potential prejudice to a fair defense and joinder of offenses must logically be brought to bear in interpreting R.C.M. 707, even if these policies are not specifically articulated in the Rule itself. In balancing the interests involved in an R.C.M. 707 exclusion resolution, none

lem which would result from a dismissal. Also avoided are administrative complications related to a ritualistic dismissal and prereferral. The burden of a formal withdrawal is no greater than the formal requirements for tolling the statute of limitations and the decision to do either is within the control of the command. An accused is in no way empowered by the UCMJ to put a court-martial in a status of dismissal, withdrawal or mistrial, so nothing done by the accused including his unauthorized absence can be tantamount to such action. R.C.M. 707 contemplates that when an accused goes on an extended unauthorized absence while pending court-martial, the original charges should be withdrawn pending his return, if stopping the clock is desired. The fact that the government intends to reinstate charges upon the accused's return is not a sufficient reason to view the original charges as remaining subject to the judicial process. *United States v. Loud Hawk*, —— U.S. ——, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986).

**3.** R.C.M. 307(c)(4) provides:
*Multiple Offenses.* Charges and specifications alleging all known offenses by an accused may be preferred at the same time. Each specification shall state only one offense.

This Rule was designed to be less restrictive and complicated in regard to accumulating charges and major-minor offense joinder than the earlier MCM provisions. The joinder matter is left to the discretion of the convening authority. The Rule rejects the application to the military society of Federal Rule of Criminal Procedure 8(a), which, in general, requires separate trials for separate offenses, MCM, 1984, App. 21, Analysis at A21–20.

**4.** R.C.M. 601(e)(2) provides as follows:
*Joinder of Offenses.* In the discretion of the convening authority, two or more offenses charged against an accused may be referred to the same court-martial for trial, whether serious or minor offenses or both, regardless whether related. Additional charges may be joined with other charges for a single trial at any time before arraignment if all necessary procedural requirements concerning the additional charges have been complied with. After arraignment of the accused upon charges, no additional charges may be referred to the same trial without consent of the accused. *Discussion.*
Ordinarily all known charges should be referred to a single court-martial.

of the applicable policy factors can be omitted from the equation.

■ Unauthorized absence is both an absence under R.C.M. 707(c)(6) and an offense of its own. In this respect it is a unique R.C.M. 707 event. In general, a defendant cannot be heard to complain if the government moves to prosecute him in accordance with the applicable policies and procedures, including the policies inherent in R.C.M. 307(c)(4) and 601(e)(2) (which directly relate to the government's fundamental interest in efficient and effective law enforcement). *See United States v. Groshong*, 14 M.J. 186 (C.M.A.1982); *United States v. Johnson*, 1 M.J. 101 (C.M.A. 1975) (recognizing the applicability and assessing the impact of additional misconduct on speedy trial issues under *United States v. Burton, supra*). Such prosecutions should not, however, occur under circumstances unduly prejudicial to the accused. *See, Johnson.* To hold that the joinder policy is an irrelevant consideration under R.C.M. 707 is to abrogate the policy for all practical purposes. If delay is justifiable under R.C.M. 707(c)(7) due to an accused's joinder to a coaccused for trial under the circumstances of that Rule, then we believe it reasonably contemplated by the Rule to consider joinder of subsequent offenses as a factor in determining excludable delay. We find nothing in R.C.M. 707 or the joinder rules which proscribes joinder policy in the application of R.C.M. 707, nor do we see anything in the Rule which gives the government license to forever delay prosecution because of subsequent offenses. Rather we see a Rule having a reasonableness limitation. *See United States v. Novak*, 715 F.2d 810, 814 (3d Cir.1983). We are compelled to the conclusion that the balancing steps set forth generally in *United States v. Durr, supra*, need to be tailored to the context of the specific exclusion problem in order to weigh the interest of both government and accused. Thus in determining whether a prosecution of a subsequent unauthorized absence (and any related offense) is an event which justifies the delay for good cause as well as the reasonableness of the delay credited to it,

we hold that the following factors are significant and must be considered.

a. The gravity and complexities of the original offenses.

b. The length of the absence, the circumstances surrounding its inception and termination and the complexities of proof.

c. The time and complexities involved in returning and joining the accused to his original command or obtaining necessary records and documents by any new command to which the accused might be joined and whether or not the government was reasonably diligent in accomplishing these tasks.

d. The time, procedures and complexities involved in accomplishing the joinder of offenses by which the government seeks to further its goal of efficient and effective law enforcement and the extent to which that policy is served by the joinder.

e. The actual delay in the trial on the original charges caused by the joinder of the subsequent offense. This factor includes both nexus and time.

f. The right of the appellant to be tried within 120 days of a triggering event, delayed only by good cause.

g. Prejudice to the accused, including but not limited to his restraint status on both sets of offenses, access to the witnesses and evidence pertaining to the original offense, and whether the delay occasioned by the joinder is relatively slight or significant in relation to other items of prejudice, and any other factors indicating prejudice to the accused.

h. The existence of any bad faith, *i.e.* joining the subsequent offense only to gain time and then dropping them just before trial.

i. Whether there has been any demand for speedy trial, including conduct of the accused or counsel manifesting a desire to have or to avoid a speedy trial. The demand for speedy trial and other relevant conduct are significant measures of

the intensity of an accused's desire, and, hence, his interest in, a speedy trial.[5] After weighing the forgoing factors, the military judge may, in the exercise of judicial discretion, determine that all, some or none of the time in question, beyond the actual period excludable under R.C.M. 707(c)(6) as resulting from that absence, is excludable under R.C.M. 707(c)(8)—good cause—because of the convening authority's decision to join original and additional charges.[6]

The essential findings entered by the military judge are set forth below.

I find as follows:

One: That the basic chronology of the case is set forth in Appellate Exhibit number VII, the stipulation of fact, which I have considered.

Two: That the testimony of First Lieutenant M.E. Wakefield, U.S. Marine Corps and Gunnery Sergeant D.L. Manwaring—excuse me, R.L. Manwaring, U.S. Marine Corps was truthful and accurate; i.e., I considered as fact their entire testimony. [Testimony refers to actions needed to join accused and revive prosecution.]

Three: That the government took no action to request either a delay of the Article 32 investigation or a continuance of the court-martial based upon the provisions of R.C.M. 707(c)(5).

Four: That, on or about 20 or 21 October 1985, Captain Crebbin was detailed as the trial counsel for the case.

Six:(sic) That the period from 22 April '85 to 26 September '85; i.e., 167 days, is excludable under the provisions of R.C.M. 707(c)(6). Additionally, I find that some other period of time after the accused returned to the Pearl Harbor Brig on 26 September '85 must be excludable under the provisions of R.C.M. 707(c)(6) and R.C.M. 707(c)(8) as a period of time resulting from the absence of the accused and for good cause. One key question is, what is this period of time? Obviously, there have been no hard facts introduced to establish this period of time. Thus, I conclude that it was what we lawyers and judges call "a reasonable period of time." Considering (a) that the government has the burden of proof on this issue; (b) that the legal representatives of the government knew of the accused's return to the Pearl Harbor Brig on 26 September '85; (c) that the charges that are the subject of this motion had already been the subject of an Article 32 investigation and had actually been referred to a general court-martial; (d) that when the accused absented himself allegedly on 22 April '85 the speedy trial clock had already ticked away for approximately 96 days; and, (e) that a

---

**5.** We believe this analytical approach coincides with civilian Federal Court decisions and the factors generally considered under the Federal Speedy Trial Act. *United States v. Greene,* 737 F.2d 572 (6th Cir.1984); *United States v. Novak, supra; United States v. Felton,* 592 F.Supp. 172 (M.D.Pa.1984) *rev'd on other grounds,* 753 F.2d 276 (3d Cir.1985); *United States v. Zielinski,* 519 F.Supp. 870 (W.D.Pa.1981). We do not find this approach unduly flexible or complex as there are many aspects of R.C.M. 707 which defy bright-line solution and which will require an analysis similar to this case.

**6.** We note that the practical effect of our analysis, in cases where charges have not been withdrawn, is to drive the government to the military judge, via a motion for appropriate relief prior to trial, during the hearing of which the analytical factors can be presented and considered *before* the 120 days expire as to the original offenses. After considering the information the military judge may decide on a date by which the government must either be ready for trial on both sets of charges or proceed to trial on the original set or some other appropriate scheme. The continuance solution may cause some problems in cases where the administrative joining process is complicated for some reason and the processing unit (usually not possessed of a legal staff much less conversant with the complexities of R.C.M. 707 computations) does not get the case to the lawyers soon enough. As a practical matter, these latter types of cases will have to be litigated via speedy trial motion where the military judge can consider the administrative complexities in resolving the matter of reasonable diligence. The reality that administrative joining processes always take time should not be used to enable an accused to escape responsibility for serious offenses via repeated unauthorized absence nor should that process be an excuse for dilatory action by the government.

new trial counsel would have had to have had some time to read the Article 32 investigation and to assemble witnesses, I conclude, being generous to the government, that I must add a period of time of approximately 15 days to the period of time that must be excluded. I know that this period is somewhat arbitrary; however, I believe, based upon my experience and the facts of this case, that the government could have tried the accused on the charges that are the subject of this motion within 15 days after his return from the alleged unauthorized absence.

In this case, I simply cannot exclude more time. In particular I cannot exclude approximately 50 days; i.e., from 26 September to 4 November '85 when the new trial counsel was appointed, as argued by the government, noting as adduced by evidence today that the trial counsel was in fact appointed or detailed on or about 21 or 22 October. This is based upon my belief that the accused's right to a speedy trial under the provisions of R.C.M. 707 should not be determined by the date that an administrative act for appointing a trial counsel is accomplished. Indeed, if this were the law, the government would be encouraged to do a little foot dragging and that is not the intention of the drafters of R.C.M. 707.

I also add that the government has not proven the existence of truly exigent circumstances that justify in my mind a longer period of excluded—excludability. At the bottom line, I conclude that the government erred for whatever reason, I need not name names, when the accused was returned to Pearl Harbor Correctional—excuse me, Pearl Harbor Brig on or about 26 September 1985. It proceeded (a) to spend an inordinate amount of time to gather basic information regarding potential charges against the accused; e.g., the message traffic that was referred to in the lieutenant's testimony as going to the U.S. Air Force to establish the exact date of the earlier termination—excuse me, of the earlier apprehension; and (b)

to head for another Article 32 investigation on additional charges. At that point the government simply did not have enough days left on the 120-day clock for the proceedings that were undertaken, nor did they have enough time to proceed in a languid fashion.

Six: And, if my arithmetic is inaccurate I request that the counsel correct me on this, I find that the calculations that I make are as follows:

That 158 days is excludable as the direct time attributable to the unauthorized absence and the time spent in Nevada;

Then I add 15 days to that based upon what is, in essence, my conclusion that the government could have proceeded to trial within 15 days on the charges before this court.

That comes to a total of 173 days that I find to be excludable.

It appears that we have 325 days to subtract from—I subtract 173 days from the 325 days and I come up with 152 days chargeable to the government.

Accordingly, the motion is granted.

■ The military judge in this case properly treated the delay issue as a tandem R.C.M. 707(c)(6) and (c)(8) problem, affording the government delay from the inception of absence (22 April 1985) to the date on which the accused was confined back in Hawaii (26 September 1985) under R.C.M. 707(c)(6). He then afforded the government the time remaining on the old speedy trial clock (24 days) and an additional 15 days to allow for the appointment of a new trial counsel, under R.C.M. 707(c)(6) and (8). Regarding these findings we conclude that the military judge patently did not confuse "good cause" and "exigent circumstances" as contended by the Government, as he patently addressed delay due to absence, good cause and, in addition, found no exigent circumstances to justify more exclusion, which we presume to be referring to military exigencies. The military judge also revealed, explicitly or implicitly, that he considered many of the factors which we have previously discussed as relevant to

resolving the issue. Patently, he did not consider the R.C.M. 307(c)(4)/601(e)(2) joinder policy relevant to his decision. Earlier comments of the military judge lead us to conclude that he did not believe the prosecution of the appellant's subsequent offenses was a relevant factor to the issue. In this regard he erred. *United States v. Groshong, supra. Cf. United States v. Durr, supra.*[7] The analysis, so defective, may have led the military judge to an infirm conclusion. Accordingly, we do not need to decide the related Government issue of whether the extra 15 days allotted by the military judge was unreasonable, because, if the correct analysis is used, the same or a different decision may result. We think that is important for the trial military judge to consider the facts under the correct standard.[8]

In view of the foregoing the decision of the military judge is reversed. The case is remanded to the military judge for further proceedings not inconsistent herewith.

Judge GLADIS and Judge CASSEL concur.

---

UNITED STATES

---

7. *United States v. Durr, supra,* is distinguishable on its facts, so its contrary result in applying its standard does not affect the reasoning in this case.

8. We do note that apparently left unresolved by the military judge is the accountability for time expended to secure a defense requested polygraph and the precise accountable chronology attending Additional Charges I and II, which may carry significantly different trigger dates under R.C.M. 707.