**UNITED STATES, Appellant,**

v.

**Duane IVESTER, 491 74 5368, Airman Apprentice (E–2), U.S. Naval Reserve, Appellee.**

**Misc. Dkt. No. 86–04.**

U.S. Navy-Marine Corps Court of Military Review.

31 July 1986.

(1984).

Lt Georjan D. Overman, JAGC, USNR, Appellate Government Counsel.

Lcdr J.J. Quigley, JAGC, USN, Appellate Defense Counsel.

Lt Neil B. Worden, JAGC, USNR, Appellate Defense Counsel.

MITCHELL, Senior Judge:

The United States appeals under the Uniform Code of Military Justice (UCMJ), Article 62, 10 U.S.C. § 862, from a trial court ruling granting a defense motion to dismiss for lack of speedy trial. At issue is whether the military judge, basing his decision on *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), vice Rule for Courts-Martial (R.C.M.) 707,[1] applied the wrong legal standard.

The defendant is charged with five specifications of unauthorized absence which were preferred on 18 October 1985. He had previously been placed in pretrial confinement on 11 October 1985. The motion to dismiss was thrice litigated on 18 February, 4 March, and 17 March 1986, being denied on all but the last occasion. In ruling on the two earlier motions, the military judge found no transgressions of constitutional dimension or of R.C.M. 707, ruling that the entire period of 21 November 1985 to 13 February 1986 was excludable time under the Rule, fundamentally because of a defense-requested mental examination. In ruling on the last motion, the military judge found that the period from 13 January to 13 February 1986 was not excludable, that the Government had not been diligent in carrying out the court's order for a supplementary psychiatric evaluation during the period 18 February to 4 March 1986, and that the Government had not evidenced due diligence in the prosecution of the case. The military judge's decision was clearly based on the second prong of *Burton;* as was explained in the record *Burton* was

> [e]ssentially the basis for the decision, although I understand that that portion of the *Burton* Decision [sic] has been somewhat discredited recently in case law, I nevertheless find it in this case on the particular facts of this case considering the mental status of the accused and the lengthy pretrial confinement that the Government's lackadaisical efforts in responding to the 25 February order of the court [sic]. It simply did not evidence the kind of diligence in the prosecution of the case that there ought to be in a case of this nature at this stage.

The question presented by this case is to what extent, if any, is there vitality left in *Burton* following the effective date of R.C.M. 707. The chronology of the case is as follows:

11 Oct 1985 Accused confined at Naval Brig, Naval Station, Norfolk, Virginia. Charge Sheet.

21 Nov 1985 Defense counsel requests a psychiatric evaluation of the accused pursuant to R.C.M. 706. Government counsel notes the extent of pretrial confinement and expresses concern

---

1. Manual for Courts-Martial, United States, 1984.

about possible delay; states Government is ready for trial except for defense request.

25 Nov 1985 Letter from military judge ordering 706 Board was issued. Appellate Exhibit X.

13 Jan 1986 Accused admitted to Portsmouth Naval Hospital for further evaluation.

30 Jan 1986 Staffing conference held with concomitant 706 Board shortly thereafter.

11 Feb 1986 Defense counsel becomes aware of the initial draft of psychiatric evaluation indicating that the accused was incompetent.

13 Feb 1986 Portsmouth Naval Hospital issues psychiatric evaluation (R.C.M. 706 Board) results finding accused legally sane and competent to stand trial.

18 Feb 1986 New military judge assigned to case denies all defense motions, but orders new psychiatric evaluation to eliminate appearance of impropriety in Naval Hospital actions.

20 Feb 1986 Military judge submits order for a new psychiatric evaluation (R.C.M. 706 Board) to Commander, Naval Hospital, Portsmouth, Virginia.

4 Mar 1986 Defense renews motion to dismiss due to lack of speedy trial on the grounds that no 706 Board had been held or even scheduled. Military judge denies the motion, but states that he is not impressed with the Government's diligence.

17 Mar 1986 Defense counsel renews motion to dismiss due to denial of speedy trial and alleges improprieties in Dr. Solomon's evaluation.

19 Mar 1986 Military judge grants motion to dismiss and orders accused released from confinement at the Portsmouth Naval Hospital. (R. 122.)

In *Burton*, the Court of Military Appeals was asked by appellate defense counsel to promulgate new and more specific guidance for determining compliance with the speedy trial provisions of the sixth amendment of the Constitution and Articles 10, 30(b) and 33 of the Uniform Code of Military Justice, 10 U.S.C. §§ 810, 830(b), 833. For cases involving offenses occurring after the date of the *Burton* decision, 17 December 1971, a two-pronged standard was to be applied to speedy trial issues: (1) a presumption of a violation of the UCMJ, Article 10, exists when pretrial confinement exceeds three months, which places a heavy burden on the Government to show either diligence or face dismissal of charges, and (2) when the defense requests a speedy disposition of charges, the Government must respond to the request and either proceed immediately or show adequate cause for any further delay or face appropriate relief at trial. This somewhat rigid two-pronged standard is not found in the four factor balancing test applicable to speedy trial issues of constitutional dimension. *See Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Nor was such a test found in Article 10, or in the Manual For Courts-Martial, United States, 1969 (Rev.). Consequently, it cannot be seriously argued that the basis of the *Burton* standard is constitutional or statutory interpretation. The implicit basis of *Burton* must be the protection of a statutory right through a supervisory power over military justice matters of which the Court of Military Appeals deems itself possessed and which was exercised in *Burton* to adopt a more specific and, perhaps, more manageable test for speedy trial than existed with the constitutional standard.[2] In *United States v. Rowsey*, 14 M.J. 151, 152 (C.M.A.1982), *Burton* was likened to various state and federal efforts to give more precise statutory meaning to the vague constitutional speedy trial standard,

---

**2.** While it can be argued that the *Burton* rule was also designed to protect the constitutional right to speedy trial, it was so configured in the sense that, if the *Burton* standard were met, one could hardly imagine a situation in which the constitutional right would be violated. *See United States v. Nance*, 666 F.2d 353 (9th Cir.), *cert. denied* 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982).

while, at the same time, avoiding too much rigidity. The military law, although in Articles 10, 30(b) and 33 containing some specificity, was basically as vague as the constitutional speedy trial law. The Court of Military Appeals, therefore, exercised its perceived preeminent authority in a practical vacuum in the military law, and *Burton* was born. *Burton* did provide a greater degree of specificity than the Constitution or the extant military law and thus military law joined the similar efforts of state and federal lawmakers noted in *Rowsey*. *Burton* was decided, however, prior to the effective date of the Manual for Courts-Martial, United States, 1984 (MCM), specifically R.C.M. 707.

R.C.M. 707 is predicated upon *ABA Standards, Speedy Trial 1978* and generally tracks the civilian federal speedy trial statute found in 18 U.S.C. § 3161 *et seq. United States v. Lilly*, 22 M.J. 620, 622 (NMCMR 1986). Succinctly, R.C.M. 707 is a complete speedy trial scheme and provides rather specific guidelines for resolving speedy trial issues in cases involving pretrial arrest or confinement as well as all other cases. It has provisions for determining the inception of speedy trial clock as well as exclusions from accountability which are based upon certain specific events.

Among the R.C.M. 707 exclusions is delay for purposes of examination into the mental capacity of an accused, an event which in this case precipitated the greatest delay. These exclusions are not "but for" in character but justify delay once the event occurs. While normally the time required to complete an event is not subject to any reasonableness standard, we opined in *Lilly* that the exclusions might be subject to some government-diligence/undue-prejudice-to-the-accused standard. *Lilly* at 624.

In pertinent part, R.C.M. 707 provides:

(d) *Arrest or confinement.* When the accused is in pretrial arrest or confinement under R.C.M. 304 or 305, immediate steps shall be taken to bring the accused to trial. No accused shall be held in pretrial arrest or confinement in excess of 90 days for the same or related charges. Except for any periods under subsection (c)(7) of this rule, the periods described in subsection (c) of this rule shall be excluded for the purpose of computing when 90 days has run. The military judge may, upon a showing of extraordinary circumstances, extend the period by 10 days.

The Rule is designed to protect constitutional and UCMJ, Article 10, speedy trial rights and was implemented because experience with the application of the *Burton* rule showed that *Burton* was too inflexible. MCM, App. 21, Analysis at A21–36—A21–37 (1984). Thus it was determined by the drafters of the Rule that, in practice, the judgment of the *Burton* court in developing the arbitrary guidelines of the decision, in some respects, proved infirm and needed some mid-course correction. R.C.M. 707 also filled the void in legislation which led to the *Burton* decision.

The Discussion section of R.C.M. 707 doffs its hat to the existence of the *Burton* decision, and the position of practical dominance of the Court of Military Appeals in the military justice system, by cautioning that R.C.M. 707 and the Constitution may not be the final arbiters of speedy trial issues because of judicial decisions (*Burton*). It does not, however, signal any intention that the *Burton* rule live on, nor does the express language of Rule 707 itself do so. The Discussion states:

In addition to the requirements of this rule, judicial decisions have held that when an accused has been in pretrial confinement for more than 90 days (not counting certain deductible periods, *see* discussion below) a presumption arises that the accused's right to a speedy trial under Article 10 has been violated. In such cases, unless the prosecution meets a heavy burden to show that the Government has exercised due diligence, the charges will be dismissed. Under some circumstances, this standard could result in dismissal of charges, despite compliance with this rule.

Periods of delay specifically requested or caused by the defense and reasonable delays for examinations into mental capacity or responsibility ordinarily are not included in the 90-day presumption. Other periods which are deductible under R.C.M. 707(c) are charged to the Government for purposes of the presumption.

When an accused in pretrial confinement demands immediate trial, the Government "must bring the accused to trial promptly or show adequate cause" to excuse the delay.

MCM, Part II at 85–86 (1984).

MCM, App. 21, Analysis at A21–37 (1984) compares *Burton* rule exclusions and R.C.M. 707(c) exclusions and also states:

(d) *Arrest or confinement.* ... The discussion notes the judicial presumption of an Article 10 violation under *United States v. Burton, supra.* The application of subsection (d) should preclude triggering the 90-day presumption in most cases.... However, not all of the periods of exclusion under subsection (c) are deductible for purposes of *Burton* under current precedents. Unless *Burton* and its progeny are reexamined (*see infra*), it would be possible to have a *Burton* violation despite compliance with this subsection.

\*　　\*　　\*　　\*　　\*　　\*

The *Burton* rule has undergone considerable evolution in a short time.... The rule has been questioned by at least one judge.... Subsection (d), together with the speedy trial requirements of this rule provides a basis for further reexamination of the *Burton* presumption.

The analysis of R.C.M. 707, like the discussion section of the MCM, merely genuflects at the practical preeminence of the Court of Military Appeals. It signals no intention that *Burton* survive R.C.M. 707. This, together with the strong suggestion that *Burton* be reexamined, is very per-

suasive evidence that the implementation of R.C.M. 707 was intended to sound the death knell of *Burton,* not herald its continued vitality.

If the reasons for the *Burton* rules no longer exist, if a complete regulatory scheme encompassing most of the significant aspects of the *Burton* rule, though admittedly not every aspect, has been promulgated by the President, pursuant to his authority under the UCMJ, Article 36, 10 U.S.C. § 836, and if the drafters of the rule suggest that *Burton* be reexamined, then we must conclude that the basis for the *Burton* rules no longer exists, that the President has preempted the field and, absent a reason for continued existence, the rule itself is extinguished. In these circumstances, there is just no practical room left for *Burton.* We are convinced, furthermore, that, if the Court of Military Appeals were to decide the *Burton* case today, it would not promulgate the guidelines therein in the face of R.C.M. 707. In such a circumstance this Court can properly decline to follow precedent. *Indianapolis Airport v. American Airlines, Inc.,* 733 F.2d 1262, 1272 (7th Cir.1984). There is no need to await a magic pronouncement from the Court of Military Appeals to hold that R.C.M. 707 and the Constitution control the determination of speedy trial issues and that the *Burton* rules are no longer viable.

 Since the military judge in this case applied the anachronistic guidelines of *Burton,* he erred. The error cannot be salvaged by application of any UCMJ, Article 10, reasonably necessary time concept to the sanity board exclusion. *See Lilly,* 22 M.J. at 624.[3] The military judge's decision is not supported under any such standard, even if we held that such a standard applied to the R.C.M. 707 exclusions. The military judge in ordering the psychiatric examination did not issue his order to the representative of the United States but instead issued his orders directly to the Com-

---

**3.** *Lilly* merely suggested that there might prove to be some reasonably necessary time standard in the Rule 707 exclusion. The United States Supreme Court has since held that there is no

such standard in the Speedy Trial Act. *Henderson v. United States,* — U.S. ——, ———–———, 106 S.Ct. 1871, 1875–76, 90 L.Ed.2d 299 (1986), *affirming* 746 F.2d 619 (9th Cir.1984).

manding Officer of the Medical Center. The final order set a number of conditions designed to deal with perceptual problems regarding the Medical Center's procedure for conducting sanity boards. The order, however, reflected a misunderstanding of the chains of military command involved and confusion resulted therefrom. However, we leave the decision regarding a reasonably necessary time concept under R.C.M. 707(c) to another more appropriate case. We hold only that such a standard, even if applied to this case, would produce no different result.

■ Furthermore, even if we assume that *Burton* lives on, its presumption of denial of speedy trial would have been inapplicable because pretrial confinement for which the Government was accountable did not exceed 90 days. *United States v. Rowsey, supra.* The second prong of *Burton* would have been satisfied as a matter of law because, while the accused demanded trial while in confinement, the Government proceeded with reasonable diligence and demonstrated adequate cause for the delay.

We appreciate the concern of the military judge over the procedures utilized to conduct the R.C.M. 706 Board. The judge found that there is a policy at Portsmouth Naval Hospital to shield from outside examination the fact or nature of disagreement in the Department of Psychiatry as to the results of sanity boards conducted there. If this is true, the appropriate remedy for dealing with this problem is not dismissal of charges for lack of speedy trial. Rather, to avoid the risk of suppression of evidence in other cases, it is hereby recommended that the Judge Advocate General of the Navy initiate any inquiry deemed appropriate and bring the matter to the attention of the proper authorities so that the objectionable policy will be eliminated.

The decision of the military judge granting the defense trial motion for dismissal due to lack of speedy trial is reversed. The case is remanded to the Judge Advocate General for return to the trial court for further proceedings not inconsistent herewith.

Judge GLADIS and Judge CASSEL concur.