UNITED STATES

v.

Staff Sergeant Jerry D. COOK, FR 420–88–4378, United States Air Force.

ACM 25406.

U.S. Air Force Court of Military Review.

Sentence Adjudged 20 Feb. 1986.

Decided 10 Feb. 1987.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Captain Charles L. Wille.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert, Colonel Joe R. Lamport, Major Joseph S. Kistler, Major David F. Barton and Captain Robert L. Marconi, USAFR.

Before SESSOMS, STEWART and LEWIS, Appellate Military Judges.

## DECISION

STEWART, Judge.

Contrary to his pleas the appellant was convicted by general court-martial of two counts of stealing U.S. currency from the United States, presenting a false claim for payment, and wrongfully distributing cocaine. The approved sentence includes a bad conduct discharge, confinement for one year, forfeiture of all pay and allowances, and reduction to E–1.

We examine here the assigned error that the appellant was denied a speedy trial. The appellant was not in pretrial confinement or arrest, but presentation of evidence on the merits to the factfinders did not begin until 141 days after he had been notified of the charges. Our chronology appears in the Appendix. Two Article 32, U.C.M.J., investigations were conducted. The contested issue is whether the military judge was correct in deducting 14 days as chargeable to the defense because of its request for the appearance of four witnesses at the second Article 32 investigation hearing.

We turn now to the pertinent facts. Shortly before, and during, the initial Article 32 hearing, defense counsel requested the appearance of four witnesses. The first was the appellant's former wife, Mrs. McCauley. The others included two Air Force Office of Special Investigations (OSI) special agents stationed in the Philippines and Germany and a civilian informant living in Schenectady, New York. Mrs. McCauley's probable evidence indicated the appellant knew they were divorced before he filed financial entitlement papers claiming her as a dependent. The other three witnesses had been involved in planning and executing cocaine "buys" from the appellant. Ultimately the only evidence from these four witnesses introduced at trial was the submission by the government of Mrs. McCauley's deposition and the prosecution testimony of one OSI agent. The Article 32 Investigating Officer ruled the witnesses were not reasonably available and denied the requests. Instead, he relied upon the written sworn statements of three. On 15 October 1985 the initial Article 32 Investigation Report was forwarded to the general court-martial convening authority.

The dates upon which some events occurred thereafter are not specified in the record. However, it is clear that the general court-martial convening authority directed a second Article 32 investigation, with a different Investigating Officer. There were several reasons for the second investigation. One was that the four witnesses requested by the appellant should be produced at the Article 32 hearing. Another was that it would be better if another officer investigated the charges since the first Investigating Officer was the base Chief of Military Justice, albeit he was a recent assignee to the office who had not previously participated in the appellant's case. Finally, the charges needed minor redrafting and a new specification, of which the appellant was ultimately acquitted, was indicated. On 5 November 1985 defense counsel submitted a written request that the four be produced at the second Article 32 hearing. The government proceeded to arrange for their appearances.

The situs of the Article 32 hearing was to be Tyndall Air Force Base, Florida, the appellant's station of permanent assignment. Initially it was believed that Mrs. McCauley was residing in Tacoma, Washington. Even before the first Article 32 investigation hearing the government had unsuccessfully attempted to locate Mrs. McCauley. The OSI determined that Mrs. McCauley had moved away from Tacoma without leaving a forwarding address. Discovering that Mrs. McCauley was married to a U.S. Army member recently transferred to Germany, the OSI sent a message, on 1 October 1985, to the OSI office at Rhein-Main Air Base, Germany, requesting that Mrs. McCauley be located through her husband.

The OSI did not follow up on its 1 October message until 20 November 1985. Thereafter, on 22 November, it received a reply giving Mrs. McCauley's address in Detroit, Michigan. That reply recounted that the 1 October message was inexplicably not received until 4 November 1985, Mrs. McCauley's husband initially refused to cooperate, and the address was obtained through intervention of the husband's commander. Acting on this information, the Chief of Military Justice at Tyndall Air Force Base sought to obtain Mrs. McCauley's presence at the second Article 32 hearing. His first telephone call to Mrs. McCauley's residence produced the information that she was working and not at home. Later she agreed to come to the second Article 32 hearing, which was held a week or ten days afterwards. The second Article 32 Investigating Officer was appointed on 11 December 1985, and he held his hearing on the two following days. All four witnesses appeared and testified.

The military judge denied the defense's motion to dismiss due to lack of speedy trial. During litigation on the motion defense counsel testified she knew her request for witnesses would cause some delay and the delay would be a reasonable period of time. The military judge conclud-

ed that a fourteen day delay was chargeable to the defense under Rule for Courts-Martial (R.C.M.) 707(c)(3), because the defense knew a reasonable delay would ensue in order to honor the request and therefore consented to it.

■ R.C.M. 707(c)(3) provides, "Any period of delay resulting from a delay in a proceeding or a continuance in the court-martial granted at the request or with the consent of the defense," shall be excluded when determining whether the 120 day period for purposes of speedy trial has been met. The cases support the proposition that delays caused by certain defense requests, even though a continuance for a specified period of time is not requested, are chargeable to the defense. *United States v. Freeman,* 23 M.J. 531 (A.C.M.R. 1986); *United States v. Bean,* 13 M.J. 970 (A.C.M.R.1982), *pet. denied,* 14 M.J. 291 (C.M.A.1983); *United States v. White,* 22 M.J. 631 (N.M.C.M.R.1986); *United States v. Herron,* 4 M.J. 30 (C.M.A.1977); *United States v. Roman,* 5 M.J. 385 (C.M.A.1978).

■ Providing for the presence of witnesses for trial is ordinarily one of the routine responsibilities of the prosecution, and, therefore, normally delay in producing witnesses is not deductible. *United States v. Dinkins,* 1 M.J. 185 (C.M.A.1975). There are, however, circumstances which would mitigate this burden on the government. *United States v. Johnson,* 23 U.S.C.M.A. 91, 48 C.M.R. 599 (C.M.A.1974). Of course, *Dinkins* and *Johnson* involved government witnesses, not witnesses whose presence was requested by the defense as in the case before us. Furthermore, the witness delay in *Dinkins* involved the trial, not the Article 32 investigation.

■ We believe a distinction should be drawn between providing witnesses at Article 32 investigations and at trials. Obviously at trial, because of the rules of evidence, failure to produce witnesses may well result in failures of proof. The Article 32 investigation is a preliminary stage in which the rules of evidence do not apply and written statements of witnesses may

be considered. R.C.M. 405(g) only requires the Investigating Officer to produce witnesses who are reasonably available. "A witness is 'reasonably available' when the significance of the testimony and personal appearance of the witness outweighs the difficulty, expense, delay, and effect on military operations of obtaining the witness' appearance." R.C.M. 405(g)(1)(A). Thus, it is quite apparent that an accused has no absolute right to the production of witnesses at an Article 32 hearing and that delay in the proceedings is one factor which may justify an Investigating Officer's declination to produce a defense requested witness. Indeed, the first Investigating Officer denied the request for Mrs. McCauley's production because of the expense to the government and "the delay in the conduct of the Article 32 Investigation which would necessarily result ..."

The Court of Military Appeals discussed in general terms delays in Article 32 Investigations in *United States v. Talavera,* 8 M.J. 14 (C.M.A.1979). Said the Court, "We ... start with the concept that all Article 32 time is chargeable to the Government, unless it can be established that one or more portions thereof are excludable because the "attendant circumstances" were such that more time than 'normal' was required for each part." *United States v. Talavera, supra,* p. 18. Applying the exception to the rule, the Court excluded six days because a notice requirement to the Japanese authorities delayed the attendance of several Japanese witnesses at the Article 32 investigation. While the Court's opinion does not identify whether the government or the defense was primarily interested in the attendance of these witnesses, we do note that there is a recognition that justifiable delays in obtaining witnesses will not be charged to the government. We believe such reasoning is, in all fairness, equally applicable to a situation where the defense requests witnesses who are difficult to produce. We are not alone in believing there are circumstances justifying charging witness request delay to the defense. The U.S. Army Court of Military Review has stated in a situation where the

defense had requested a witness at an Article 32 investigation, "If the defense wanted the ... witness, then the defense must accept the responsibility for the reasonable period required to comply with the defense's request." *United States v. Bean, supra,* 972.

■ Even though the defense requested the presence of Mrs. McCauley, it was unable to enlighten the government as to her whereabouts. Undoubtedly it would take some time to locate her and arrange for her presence along with the three other witnesses. As it turned out she had a job and desired to arrange her Article 32 appearance so it would not interfere with her work. Furthermore, in addition to Mrs. McCauley, the government had to arrange for the appearance of witnesses stationed overseas and a civilian living in New York State. It is not unreasonable to estimate that at least 14 days delay would be entailed in producing the witnesses.

Nor do we believe the fact that the government directed a second Article 32 investigation relieves the defense of the responsibility for a reasonable period of time to arrange for the presence of these four witnesses. Even though defense counsel may have thought a second investigation was unnecessary, she nevertheless formally requested the witnesses. Furthermore, one of the purposes of the second investigation was to provide the defense these witnesses as it originally requested. The defense is chargeable with a delay when, "a continuance or delay is granted solely for the benefit of accused." *United States v. Driver,* 23 U.S.C.M.A. 243, 49 C.M.R. 376 (C.M.A.1974). To place the entire burden of delay upon the government in cases such as this would discourage the government from producing defense requested witnesses at Article 32 investigations.

While the government in this case probably took longer than necessary to produce the four witnesses, some time was nevertheless chargeable to the defense. *See United States v. Talavera, supra.* Here 14 days was not unreasonable. We hold

that the military judge was correct in charging the defense with 14 days delay resulting from its request for the appearance of two military and two civilian witnesses scattered around the world and the United States, one of whose location was unknown. This deduction along with other allowable deductions brought the appellant's trial within the 120 day requirement of RCM 707. Even if some of the steps in bringing the appellant to trial were less than expeditiously accomplished, the appellant was not prejudiced thereby. *United States v. Talavera, supra.* Thus, the military judge did not err in denying the defense's motion for dismissal for lack of speedy trial. We find nothing in *United States v. Burris,* 21 M.J. 140 (C.M.A.1985), which is contrary to our decision in this case.

However, in upholding the military judge's ruling, we also join with him in saying, "This issue could have been avoided in its entirety had there been some good case management ..." The government should have done better in this case.

We have examined the record of trial, the assignment of errors, the government's reply thereto, and the matters personally submitted by appellant and conclude that the findings and sentence are correct in law and fact and that no error prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings of guilty and sentence are

AFFIRMED.

Judge LEWIS concurs.

Senior Judge SESSOMS (dissenting):

I cannot join in the majority opinion. The charges were initially preferred on 30 September 1985. The Article 32, U.C.M.J., Investigating Officer (IO) announced that he was ready to proceed with the investigation on 1 October 1985. The Area Defense Counsel (ADC) requested, and was granted, a delay until 7 October 1985. On 3 October 1985 the ADC filed a new request for delay until 29 October 1985 to accommodate a civilian attorney whom the accused proposed to engage. In addition, the defense had learned that a statement of

Delcine M. McCauley was to be used by the government representative in support of the charges. She, therefore, included in her 3 October 85 letter a request for the production of Mrs. McCauley at the Article 32 hearing "so that the defense can cross examine this witness." The request for delay and the motion to produce the witness were denied by the IO. During the pretrial investigation, which began on 7 October 1985, the ADC learned that the prosecution planned to use written statements of three other individuals. Her request for the presence of these persons was also denied.

The general court-martial convening authority determined that a new Article 32 investigation should be conducted. The ADC did nothing to initiate this second investigation. In fact, when she was told that the government planned to have a new investigation because of a number of corrections to the charges previously preferred, she offered to waive the requirement for the new investigation. However, when the government insisted on having a new investigation, she again, on 5 November 1985, asked for the four government witnesses.

The OSI had taken statements from Delcine McCauley during February and April of 1985. At that time she was living in Tacoma, Washington. During the latter part of September they learned that she had departed the Tacoma area without leaving a forwarding address. At the request of the first IO, the OSI began a search for her on 1 October 1985. She was ultimately located and invited, along with the three other witnesses, to be present at the second Article 32 hearing which began on 12 December 1985.

The trial date for the general court-martial, to which the charges had been referred, was set for 13 February 1986. Two days prior to the scheduled start government counsel were first told that they would be confronted with a motion to dismiss the charges for lack of speedy trial. When the judge learned of this development he immediately called for an Article 39(a) U.C.M.J., 10 U.S.C. § 839(a) session. After permitting counsel to fully litigate the issue and making detailed findings of fact and conclusions of law, he denied the motion.

The lead case on the interpretation of R.C.M. 707, *United States v. Burris*, 21 M.J. 140 (C.M.A. 1985), bolsters the widely accepted premise that a determination of fact by the trial judge will not be disturbed on review in the absence of a showing that it is not supported by the evidence of record, or is clearly erroneous. *Burris, supra,* citing *United States v. Middleton*, 10 M.J. 123, 133 (C.M.A. 1981). In his opinion, Judge Cox leaves no doubt that the full support of the appellate courts will be given to the military judges who carry out their duties in accordance with the laws and rules provided to them. *Burris, supra,* at 141, footnote 3. However, *Burris* also plainly tells us that, when the defense moves to dismiss, the government has the burden of persuasion to justify why the case was not brought to trial within 120 days as required by R.C.M. 707. This the government failed to do.

Whether one uses the chronology prepared by the majority in their opinion or that of the trial judge, one ultimately reaches the conclusion that after deducting the only delay that was granted to the defense (6 days between 1 October and 7 October 1985), 130 days had run on the R.C.M. 707 clock. The trial judge found that 14 of the 130 days should be excluded under R.C.M. 707(c)(3) since "those days were with the consent of the defense because Captain Langley knew that a reasonable delay would ensue in order to honor her request for witnesses." The judge did not specify which 14 days he was excluding. This finding, or conclusion, is without support in the record. First of all, these were government witnesses. The IO initially planned to rely entirely upon the written statements of these persons in determining whether the charges would be referred to trial, a procedure which the trial judge found to be legally permissible and with which we have no quarrel. The

ADC, in her initial request on 3 October 1985, made it clear that she wanted the prosecution witness, McCauley, present for purposes of cross-examination. Though not stated specifically, it is apparent that she wanted the other three for the same purpose. However, not only did she not request a delay to obtain their presence, but there was never any discussion between the parties regarding such a delay.

In summary, these were government witnesses from the outset; the defense never requested a delay to obtain their presence; the government unilaterally decided to require them to be present for a second investigation; the defense did not request the second investigation; government personnel were not diligent in their search for Mrs. McCauley; the government could not establish which 14 days on the 707 clock were attributable to the defense; and, the government failed to produce any evidence that the trial would have commenced even one day earlier if there had been no request for the witnesses. Therefore there was no factual basis for the trial judge's decision to assess the defense with a 14 day delay. The motion to dismiss should have been granted.

APPENDIX

| Chronology | Day |
|---|---|
| 30 Sep 85——Appellant notified of preferred charges. | 0 |
| 1 Oct 85——Defense requests delay in Art 32 until 7 Oct 85. Granted. | 1 |
| 7 Oct 85——Hearing of first Art 32 held. | 7 |
| 15 Oct 85——First Art 32 forwarded to GCM. | 15 |
| Oct-Nov 85——GCM reviews and directs a new Art 32. | |
| 5 Nov 85——Defense requests four witnesses which it had requested at first Art 32. | 36 |
| Oct-Nov 85——Government decides to produce the four requested witnesses at Art 32. | |
| 12–13 Dec 85——Second Art 32 hearing held with the four requested witnesses in attendance. | 74 |
| 30 Jan 86——GCM refers charges to trial. | 122 |
| 12 Feb 86——Art 39(a) session convenes. | 135 |
| 13–15 Feb 86——Motions considered in Art 39(a) session. | 138 |
| 15 Feb 86——Defense orally requests continuance until 18 Feb. 86. Granted. | |
| 18 Feb 86——Evidence on merits presented to factfinders. | 141 |

Deductions from 141 days:

6 days for defense request for delay in first Art 32.
14 days for defense request for four witnesses at Art 32.
3 days for consideration of motions.
2 days for defense requested continuance of trial.

Deductible delays total 25 days. 25 days subtracted from 141 days equals 116 days.