## UNITED STATES

v.

**Senior Airman Everett P. NEELEY, FR 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, United States Air Force.**

**ACM 24645.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 16 July 1984.

Decided 5 Nov. 1985.

Appellate Counsel for the Accused: Mr. Thomas M. Carpenter and Mr. Charles L. Carpenter, Jr., Little Rock, Arkansas; Colonel Leo L. Sergi, and Lieutenant Colonel Michael D. Wims. Appellate Counsel for the United States: Colonel Kenneth R. Rengert, Colonel Andrew J. Adams, Jr., and Lieutenant Colonel Donal F. Hartman, Jr.

Before HODGSON, FORAY and MICHALSKI, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

The events that led to the offenses before us are not in dispute. From all accounts the appellant and Airman First Class Harris, who lived together in an off-base residence, enjoyed a bittersweet relationship which began deteriorating in the fall of 1983. On 11 January 1984, she told the appellant that their arrangement was not working out and she no longer wished to live with him and was moving back to the barracks. The next day, the appellant beat Harris badly about the face and head and threatened to kill her if she left him. He stopped hitting her only after she agreed to stay with him and not report the assault. To the contrary, she told her commander of the incident who interviewed the appellant and ordered him to stay away from her. Subsequently, on 6 February

charges were preferred against the appellant for assault and communicating a threat. On 7 February, he went to the dining facility on Little Rock Air Force Base where Harris worked and shot her five times in the head, neck and chest at point blank range with a .45 caliber pistol he had purchased three days before.

The circumstances just described resulted in a premeditated murder conviction together with various lesser offenses.[1] The approved sentence extends to a dishonorable discharge, life imprisonment, total forfeitures and reduction to airman basic.

## I

Early in the proceedings individual defense counsel conceded that his client killed Harris, but argued that this offense along with the lesser charges were the result of a mental condition that made the appellant not accountable for his actions. To support the existence of a mental state showing a lack of substantial capacity for the appellant to conform his conduct to the requirements of law, the defense offered the testimony of Doctor Dane Donahue and Doctor David A. Pritchard, two well qualified psychologists. Both individuals diagnosed the appellant as suffering from a "major depressive episode with psychotic features." Both agreed that it is more likely than not the appellant was unable to conform his behavior to the intent of the law. Further, Doctor Pritchard and Doctor Donahue were of the view that a person could be in a psychotic state and yet appear very normal. It was their conclusion that the appellant's girl friend's decision to terminate their interracial relationship, and the appellant's feeling that the break-up was caused by racial bias, triggered a "major depressive episode" that culminated in the killing.

In rebuttal, the Government tendered the testimony of three psychiatrists two of whom, Lieutenant Colonel (Doctor) Frank Carpenter and Lieutenant Colonel (Doctor) Thomas A. Martin III, were members of

the appellant's sanity board that met on 27 February 1984. Doctor Carpenter is the Director of Psychiatric Residency Training at Wilford Hall Medical Center, Lackland Air Force Base, Texas; Doctor Martin was the Chief of In-Patient Psychiatry at the same medical center. Based upon a review of medical records, clinical interviews, Doctor Donahue's notes, psychological tests and related materials, both individuals stated they found no evidence of a psychosis or delusional thinking in the appellant. Doctor Martin indicated the appellant did not suffer from a "major depressive episode," but had a "mixed personality disorder" which would not impact on his ability to conform his behavior to the law. Doctor Carpenter also found nothing in the appellant's medical records to support a diagnosis of "a major depressive episode." In his opinion the appellant's medical history contradicts any suggestion that his actions were the result of a psychosis or delusional thinking. Doctor Carpenter thought revenge was the motive for the killing.

The third psychiatrist to testify for the Government was Colonel (Doctor) William H. Grant, a consultant in psychiatry to the Surgeon General of the Air Force. After reviewing the findings of the sanity board, the notes and opinions of Doctors Donahue and Pritchard and other materials relating to the appellant, Doctor Grant was of the opinion there was "... not a smidgen of evidence" to indicate a psychosis or delusional thinking. He found nothing to justify a diagnosis of a "severe depression with psychotic features."

As a part of their case in rebuttal the prosecution called Captain (Doctor) Nancy A. Slicner, a Staff Psychologist in the Out-Patient Mental Health Clinic at Wilford Hall. Part of her responsibility is to evaluate psychometric tests given patients meeting a sanity board. One such test is the Minnesota Multaphasic Personalty Inventory (MMPI), which is used to identify psychotic disorders. The test has indicators to

---

1. Additionally, the appellant was convicted of assault and battery, communicating a threat, disobeying an order to stay away from Airman Harris, and retaliating against a federal witness by causing bodily harm to Airman Harris in violation of 18 U.S.C. 1513.

recognize individuals attempting to fake psychotic behavior. The appellant was given the MMPI twice—once at Little Rock Air Force Base on 16 January 1984 just after his assault on his girl friend and again in February at Wilford Hall after he had killed her. When Doctor Slicner compared the two results the first appeared to be within a normal range while the latter indicated a "thought disorder," but with no accompanying symptoms. After studying the second test and consulting with her colleagues at Wilford Hall, she concluded that the appellant "intentionally over-endorsed" the second test, i.e., attempted to establish a mental condition that was not present. After Doctor Slicner stated she had shown the appellant's MMPI profile to other psychologists at Wilford Hall, the following testimony was admitted over defense objection:

Q: What was the consensus among these people when you showed them this profile?

A: That it was intentionally inflated.

Appellate defense counsel argue that the trial judge erred to the substantial prejudice of the appellant when he allowed such evidence, as it denied the defense the right to cross-examine and confront the psychologists concerning their opinions.

■■■■ Mil.R.Evid. 703 [2] permits an expert to rely on facts and data made known to the expert at or before the hearing, even if such facts or data are neither admitted nor admissible in evidence, so long as they are of a type "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." See United States v. Benedict, 20 M.J. 939 (A.F.C.M.R.1985). We have no hesitation in holding that psychology is a field in which the experience and opinions of others trained in the discipline would be of immeasurable assistance to one attempting to

make a diagnosis. United States v. Arias, 678 F.2d 1202 (4th Cir.1982). What must be remembered is that while expert witnesses may rely on hearsay under Rule 703 to form their opinion, the hearsay itself is not admissible. United States v. Ramos, 725 F.2d 1322 (11th Cir.1984); Coulter v. Stewart, 97 N.M. 616, 642 P.2d 602 (1982); State v. Towne, 142 Vt. 241, 453 A.2d 1133 (Vt.1982). As the editorial comment to Mil. R.Evid. 703 stated, "... unless care is taken in utilizing Rule 703, parties can 'smuggle' much hearsay evidence into a case, when such evidence is not properly admitted for its truth." See Saltzburg, Schinasi and Schlueter, Military Rules of Evidence Manual, p. 329 et seq.[3] Accordingly, the trial judge erred when he permitted Doctor Slicner to testify that her colleagues also thought the appellant's second MMPI scores were "intentionally inflated."

However, we do not consider the judge's errant ruling to be of the magnitude that appellate defense counsel suggest. First, the overwhelming portion of Doctor Slicner's testimony concerned her opinion that the appellant "intentionally inflated" his MMPI test results; she did not just repeat the opinions of others. See Mallard v. Colonial Life and Accident, 173 Ga.App. 276, 326 S.E.2d 6, 7 (1985). Second, the prosecutor did not use this one sentence from a transcript of over 1000 pages to convince the members that the appellant was mentally responsible for his actions. Cf. State v. Towne, supra (Prosecution "highlighted" the hearsay in its closing argument). And finally, the Government's case as to the appellant's mental state was based on the testimony of three psychiatrists, including two members of the sanity board that examined the appellant, who were in total agreement that the appellant did not suffer a "major depression with

---

**2.** *Rule 703 Bases of Opinion Testimony by Experts*

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert, at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences

upon the subject, the facts or data need not be admissible in evidence.

**3.** A trial judge would be well-advised to give a limiting instruction to the members whenever an expert relies upon information that is not admissible for its truth.

psychotic features." Contrasted to this clear statement that the appellant had no mental disorder, was the qualified testimony of two defense psychologists that, "in their opinion, *it [was] more likely than not*, the appellant was unable to conform his behavior to the intent of the law." We are convinced that no reasonable likelihood exists that the improper admission of the hearsay evidence just discussed affected the judgment of the triers of fact. *United States v. Colon-Angueira*, 16 M.J. 20 (C.M.A.1983); *United States v. Slovacek*, 21 M.J. 538 (A.F.C.M.R.1985).

Both Doctor Slicner and Doctor Grant used charts to illustrate portions of their testimony concerning the appellant's mental condition. Trial defense counsel did not object to the use of the charts at the time the witnesses referred to them. In oral argument before us, appellate defense counsel, who represented the appellant below, candidly admitted that the lack of objection at trial when the charts were first used was a planned strategy as it "did not appear that the members were paying any attention to them." This assessment was incorrect for after the members began deliberating, they asked to again see the charts. Over defense objection, the trial judge allowed the members to view them [4]—they were not taken into the deliberation room.

■ Appellate defense counsel now contend the trial judge committed prejudicial error by permitting the members to review and take notes of charts prepared by government witnesses which highlighted their testimony. Initially, we note the trial defense counsel did not object to the witnesses' using the charts to illustrate their testimony. Further, they had the opportunity to cross-examine the witnesses on the preparation of the charts and what they represented. Additionally, the charts contain no substantive evidence, but were merely visual aids to explain the testimony.

In *United States v. Dowen*, 496 F.2d 314 (10th Cir.1974), the introduction into the jury room of a blackboard summarizing the indictment was held not to be error. The Seventh Circuit Court of Appeals permitted the jury to use transcripts of tapes of two telephone conversations during its deliberations even though the transcripts were not admitted into evidence. *United States v. Dorn*, 561 F.2d 1252 (7th Cir.1977). Permitting members to review illustrative exhibits used by witnesses as a visual aid is within the sound discretion of the trial judge. Under the facts before us we find no abuse of that discretion.[5] *See generally United States v. Cadena*, 585 F.2d 1252 (5th Cir.1978).

## II

■ Appellate defense counsel next argue that their client's conviction cannot stand because it was arrived at by less than a unanimous verdict. This argument has been raised and rejected numerous times during appeals by military accused. We also reject this claim of error. *United States v. Seivers*, 9 M.J. 612 (A.C.M.R. 1980); *aff'd* 9 M.J. 397 (C.M.A.1980); *see United States v. Hutchinson*, 17 M.J. 156 (C.M.A.1984); *Cert. denied* — U.S. —, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984).

## III

■ Finally, appellate defense counsel assert that the trial judge's instruction on sentence reconsideration was incorrect. We agree, but find this not to be prejudicial error.

During the court's deliberations on sentence, the president requested an instruction on sentence reconsideration (reballoting). The judge, in an out-of-court hearing, went over his proposed instruction with both counsel. The trial defense counsel objected to the proposed instruction, asserting that it was incorrect and arguing, cor-

---

**4.** The members viewed seven charts separately for approximately 15 minutes total.

**5.** Of course, prudence would suggest that where exhibits are used but not admitted, the trial

judge should give a cautionary instruction that the items are not in evidence and are not to be treated as such.

rectly, that the instruction should read that all members must *oppose* reconsidering a death sentence for such reconsideration to not be required. Over this objection, the trial judge gave the following instruction in part:

As there are eight members present, five must vote for reconsideration with a view towards increasing the sentence. In voting for reconsideration with a view toward decreasing the sentence, if the accused has been sentenced to confinement at hard labor for life, then six members must vote for such reconsideration, and if the accused has been sentenced to death, then eight members must vote for such reconsideration.

We agree that this instruction was misleading. However, given the mandatory minimum sentence of life imprisonment we conclude that the appellant was not prejudiced. Article 118, U.C.M.J., 10 U.S.C. § 918.

First, he received the minimum possible confinement for premeditated murder. Second, while appellate defense counsel argue that the erroneous instruction precluded reconsideration of punishments ancillary to life imprisonment, we think it inconceivable that in light of the facts before them the sentencing authority would impose any ancillary sentence element other than a dishonorable discharge, total forfeitures and reduction to airman basic.

We have carefully examined all aspects of this three week murder trial. We are morally convinced the appellant received a fair trial. It is that to which he is entitled. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

FORAY, Senior Judge and MICHALSKI, Judge, concur.