**UNITED STATES**

v.

**Martin E. RUHLING, IV, 368 92 9100, Engineman Third Class (E–4), U.S. Naval Reserve.**

**NMCM 87 4185.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 24 July 1987.

Decided 20 Dec. 1988.

Lt. Daniel W. Dooher, JAGC, USNR, Appellate Defense Counsel.

R. Clayton Seaman, Jr., Civilian Defense Counsel.

LCDR L. Friedman, JAGC, USN, Appellate Government Counsel.

Before COUGHLIN, Senior Judge, and ALBERTSON and RUBENS, JJ.

ALBERTSON, Judge:

Pursuant to his conditional pleas of guilty, appellant was found guilty of 16 specifications of various drug-related activities, including 14 specifications of distribution of crystal methamphetamine on board ship to shipmates, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a. He was sentenced by officer members to confinement for five years, forfeiture of all pay and allowances, a fine of $5000.00, reduction to pay grade E-1, and a dishonorable discharge from the Naval Service. The convening authority approved the sentence adjudged.

The appellant made several motions before entering his pleas at trial, one of which was to dismiss the charges and specifications for lack of speedy trial. The denial of that motion by the military judge is now one of three specified assignments of error on review. We find no merit in the three assignments of error.[1] Nevertheless, we will discuss the speedy trial assignment because it involves an interpretation of Rule for Courts–Martial (R.C.M.) 707(c)(9), Manual for Courts–Martial, United States, 1984, within a factual setting that has not

1. I. THE CHARGES SHOULD BE DISMISSED FOR LACK OF SPEEDY TRIAL.
II. THE MILITARY JUDGE'S DIVESTITURE OF IMPARTIALITY DEPRIVED THE ACCUSED OF A FAIR TRIAL IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION.
III. THE APPROVED SENTENCE IS INAPPROPRIATELY SEVERE.

heretofore been judicially addressed by this Court.

Undisputed at trial and on review is the fact that, at the time of trial, appellant had been in continuous pretrial confinement for a period of 96 days. The dispute at trial and on review, however, revolves around the issue of whether nine days (9–17 July 1987) were excludable days under R.C.M. 707. While appellate counsel for both sides argue that the speedy trial dispute involves the application of three provisions, R.C.M. 707(c)(3), 707(c)(5)(A), and 707(c)(9), we will address the issue only insofar as it involves R.C.M. 707(c)(9).

First, we relate the chronology of events as gleaned from the record:

| DATE OF EVENT | TOTAL # DAYS | # DAYS ELAPSED BETWEEN EVENTS | EVENT |
| --- | --- | --- | --- |
| 17 April 1987 | 0 | 0 | Appellant (A) interviewed by NIS: A confessed; A confined Navy Brig. |
| 21 April 1987 | 4 | 4 | NIS laboratory analysis prepared; presence of controlled substance confirmed. |
| 23 April—1 May | 14 | 10 | A's commanding officer requests appointment of defense counsel for A; NIS interviews persons involved in case. |
| 22 May | 35 | 21 | Original charge sheet with preferred charges (according to Art. 32 I.O. report, though SJA's pretrial advice says 26 May) (original charge sheet is not contained in the record of trial). |
| 28 May | 41 | 6 | NIS Investigation closed; report of investigation signed. |
| 3 June | 47 | 6 | Original discovery package provided to trial defense counsel. |
| 5 June | 49 | 2 | Detailed trial defense counsel receives case file from NLSO San Diego. |
| 12 June | 56 | 7 | Article 32 Investigation scheduled. |
| 18 June | 62 | 6 | USS HOEL (A's command) officially informed of participation in READIEX, 9–17 July. |
| 18–19 June | 63 | 1 | Article 32 Investigation conducted; Government represents all witnesses will be available; lists witnesses; I.O. submits report of Article 32 recommending various deletions, additions, and consolidation of charges. |
| 25 June | 69 | 6 | Notice of READIEX promulgated in POD of USS HOEL. |
| 7 July | 81 | 12 | Charges re-preferred. |

| DATE OF EVENT | TOTAL # DAYS | # DAYS ELAPSED BETWEEN EVENTS | EVENT |
|---|---|---|---|
| 8 July | 82 | 1 | SJA signs pretrial advice; Charges referred to GCM; A served with referred charges at approximately 1800. |
| 9 July | 83 | 1 | Defense counsel received referred charges; defense counsel notified by trial counsel that Art. 39(a) session is scheduled for 10 July; USS HOEL departed on READIEX. R.C.M. 802 conference held. Defense counsel serves trial counsel with discovery request and witness request. |
| 10 July | 84 | 1 | Article 39(a) session held. Trial counsel announced he was ready for trial with tangible evidence and witnesses Special Agent Eckrich; Special Agent Starnes; FN Baker; and HTFN Womer. Trial counsel stated some relevant and necessary witnesses and documents were on board USS HOEL and unavailable until 17 July 1987. Military judge continued case until 22 July. Defense states it's not requesting continuance, so time attributable to government. |
| 16 July | 90 | 6 | Some discovery provided defense counsel. |
| 17 July | 91 | 1 | Members' questionnaires provided defense; USS HOEL returns to San Diego; documents and witnesses made available to defense. |
| 18–19 July | 93 | 2 | Additional discovery provided defense. |
| 21 July | 95 | 2 | Certain prosecution witnesses received grants of immunity. Defense counsel received Government's list of witnesses from trial counsel. |
| 22 July | 96 | 1 | Trial begins. |

At trial the military judge made essential findings of fact on the speedy trial motion raised by the appellant.[2] While he addressed his findings to each of

2. R.C.M. 905(d). Attached to the record as Appellate Exhibit XXXIV is the military judge's essential findings of fact, which read in pertinent part:

\* \* \* \* \* \*

2. I find the time from 17 April 1987 to 9 July 1987 to be normal progression to trial

the three theories offered by the Government as to why the motion should be denied, we will discuss his findings only in relation to the third theory, involving the application of R.C.M. 707(c)(9).[3]

and should be counted in computing the time under R.C.M. 707(d). I find no delay during this period consented to or caused by the defense. I further find no excludable periods under R.C.M. 707(c). The period 10 July to 22 July was put in dispute by the motion and by the arguments of counsel. The government advanced three separate theories in opposition to the motion. First, the delay in the proceedings was caused by the defense counsel's failure to submit the discovery and witness requests in a timely manner, therefore the time is excludable because the government had exercised due diligence in obtaining any witnesses requested by the defense. Since the evidence would be available within two weeks, the government asserted that the period was excludable under R.C.M. 707(c)(5)(A). Finally, the government should not be accountable for the time because the USS HOEL had substantial, relevant, and necessary evidence on board and the ship was engaged in an unusual operation requirement imposed by military exigencies, under R.C.M. 707(c)(9), MCM, 1984 (Change 3).

3. I find the following facts regarding the government's first theory. The defense discovery request and witness requests were not untimely. Indeed, the requests were served just one day after the charges were referred. Additionally, the requests were not frivolous nor designed merely to delay the proceedings. The witness requests related directly to the numerous specifications, and the discovery request related in a significant manner to the defense ability to cross-examine government witnesses. The government admitted that the majority of the requested discovery could not be made available until 17 July. Full discovery was not provided until 21 July. The government cannot trigger an exclusion under R.C.M. 707(c) simply by stating, "Ready for trial, Your Honor." The government must truly be prepared to start its presentation of the evidence *and* must have complied with the various strict provisions of discovery under R.C.M. 701. (Emphasis added) I find that the government was not ready for trial on 10 July 1987 due to its failure to provide discovery to the defense. Under R.C.M. 701(g)(3)(B) the court may grant a continuance to facilitate compliance with the rule. A continuance was granted until 22 July 1987. The time is not excludable under this theory.

4. Regarding the government's second theory, although substantial necessary evidence was on board the USS HOEL which was underway and certainly unavailable by conventional means, the government failed to exercise due diligence in attempting to obtain defense requested evidence and witnesses. It was evident from the testimony of the Legal Officer, USS HOEL, the importance of the proceedings of this General Court–Martial was not properly conveyed to the command. Due diligence would include an aggressive pursuit of necessary evidence. This time is also not excludable.

5. The third theory the government advances has merit. The delay in these proceedings was, indeed, caused by an unusual operational requirement and military exigencies. The underway period of USS HOEL from 9 to 17 July 1987 was unusual and unexpected. Although deployment dates for combatant ships are always changing, the incident involving the USS STARK in the Persian Gulf precipitated these short-notice changes in the schedule of USS HOEL. The USS STARK incident occurred at a critical time in the progression to this case to trial. Although the government is not to be commended for waiting 82 days after confinement before referring charges, they are able to take advantage of R.C.M. 707(c)(9). The period 10–22 July is excluded from computation under R.C.M. 707(d). The accountable time equals 84 days.

6. I further find that *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971) does not dictate dismissal of these charges. The *Burton* presumption of prejudice raised by exceeding 90 days of pretrial confinement can only be overcome by a strong showing by the government that due diligence was exercised in proceeding toward trial. Although I previously found in paragraph 4 that the government did not exercise due diligence in procuring discovery and witnesses, the standard enunciated by *Burton* involves a look at the government placed itself in a dangerous situation in waiting until day 82 to refer charges. On the other hand, there was no request for speedy trial from the defense. I find that the government exercised due diligence in bringing this case to trial. I find no prejudice to the accused during these 96 days.

7. In view of the above, the motion is denied.

We note that the "demand" prong of *United States v. Burton, supra,* was recently overruled by the Court of Military Appeals in *United States v. McCallister,* 27 M.J. 138 (C.M.A.1988).

3. We note parenthetically, however, that with regard to the first theory, we agree with the military judge that the discovery and witness requests submitted by the defense were timely and the delay involved in meeting those requests is attributable to the Government and therefore not excludable under R.C.M. 707(c). We also agree with the military judge's statement that "The government cannot trigger an exclusion under R.C.M. 707(c) simply by stating, 'Ready for trial, Your Honor.'" The Govern-

The third theory advanced by the Government was that the trial proceedings were delayed because of unusual operational requirements and military exigencies (READIEX) facing USS HOEL during the period 9–17 July 1987 and, as a result, the Government could not meet the defense's R.C.M. 701 requests and therefore could not proceed to try the appellant until the ship returned from the exercise. The military judge accepted this theory of the Government's case. We will discuss the merits of this theory and the propriety of the military judge's ruling.

As a general rule, the Government is accountable for bringing an accused to trial within 90 days if he is in continuous pretrial confinement. *United States v. McCallister*, 27 M.J. 138 (C.M.A.1988); *United States v. Burton*, 21 U.S.C.M.A. 112, 118, 44 C.M.R. 166, 172 (1971); *United States v. Kohl*, 26 M.J. 919 (N.M.C.M.R. 1988); R.C.M. 707(d). Because appellant had been in continuous pretrial confinement for 96 days on 22 July 1987, the day trial commenced,[4] he was entitled to the relief of having the charges dismissed for lack of speedy trial unless the Government demonstrated that six or more days were excludable under R.C.M. 707(c).

We must determine, therefore, whether the military judge properly found that the nine days the USS HOEL was deployed and participating in READIEX were excludable under R.C.M. 707(c). If his finding was correct, then the appellant was not denied a speedy trial.

The nine days in question are excludable if the Government can establish first, that "the period of delay was for good cause, including unusual operational requirements and military exigencies" (R.C.M. 707(c)(9); (*United States v. Kuelker*, 20 M.J. 715 (N.M.C.M.R.1985)); and second, that a nexus existed between the event established as good cause and the proceedings. *United States v. Harris*, 20 M.J. 795 (N.M.C.M.R.1985). This is the two-pronged analysis first enunciated by the U.S. Army Court of Military Review in *United States v. Durr*, 21 M.J. 576 (A.C.M. R.1985), and subsequently adopted by this Court in *United States v. Lilly*, 22 M.J. 620 (N.M.C.M.R.1986). *Durr* also established a balancing test, wherein any determination of good cause, including reasons of unusual operational requirements and military exigencies, requires that the military judge weigh the interests of the appellant and the military in a speedy trial against the ends of justice that may be served by a delay in the trial proceedings.[5]

ment must be prepared to start its presentation of the evidence *and* must have complied with the various strict provisions of discovery under R.C.M. 701. The Government did not call any witnesses on the merits on 10 July and did not register any objections to the continuance granted by the military judge. In fact, the chronology as supported by the evidence shows that the Government did not provide the defense counsel with the list of witnesses it intended to call until 21 July 1987, the day before trial began. Additionally, the Government did not obtain grants of immunity for its witnesses until the day before the trial. Therefore, the military judge's refusal to hold defense responsible for this period of delay was correct. *See generally United States v. Cook*, 27 M.J. 212 (C.M.A.1988); *United States v. Carlisle*, 25 M.J. 426 (C.M.A. 1988).

As to the second theory advanced by the Government (that the Government exercised due diligence in obtaining the witnesses requested by the defense), we, like the military judge, find that theory also without merit for reasons analogous to those stated above for the first theory. We would further commend to the

Government's attention the recent decision in *United States v. Cook, supra* at 215, wherein the Court of Military Appeals rejects "informal 'after the fact' allocation to the defense of a 'reasonable' period of delay."

**4.** The Article 39(a), 10 U.S.C. § 839(a) session held on 10 July 1987 when the military judge continued the trial until 22 July 1987, was the appellant's 84th day of continued pretrial confinement.

**5.** This Court has previously addressed the general character of R.C.M. 707:

R.C.M. 707 establishes a 120–day rule in order to assure that an accused will be afforded a speedy trial while at the same time providing for significant flexibility, by way of exemption of certain time periods from accountability under the Rule, to permit the Government to deal with the vicissitudes of prosecutions and of the events of military life. The Rule was intended to be more flexible than the old case law. Appendix 21, R.C.M. 707(c) at A21–37, Manual for Courts–Martial, 1984 (M.C.M. 1984).

In making this factual determination, R.C.M. 905(d) requires that the military judge enter essential findings on the record. Those essential findings must include a statement of the legal basis for his decision and any other statements that might clarify the reasons for his decision. *United States v. Postle*, 20 M.J. 632, 640 (N.M.C.M.R.1985). The absence of essential findings and conclusions of law relevant to the issue presented can, in some cases, require returning the record to the military judge to state the essential findings upon which he decided the motion. *See United States v. Butterbaugh*, 21 M.J. 1019 (N.M.C.M.R.1985), *aff'd on remand*, 22 M.J. 759 (N.M.C.M.R.1986), *aff'd* 25 M.J. 159 (C.M.A.1987).[6]

As in many motions to dismiss for denial of a speedy trial, the speedy trial motion in this case involved complicated issues of fact. As a result, R.C.M. 905(d), as interpreted by this Court in *Postle*, was applicable. Additionally, the critical legal issue involved in this case (application of R.C.M. 707(c)(9))[7] also requires the employment of the aforementioned good cause/nexus analysis. *United States v. Lilly* and *United States v. Durr, both supra*. Thus, this case requires us to apply two overlapping concepts involving *Durr/Lilly* on the substantive speedy trial issue and *Postle/Lilly* on the adequacy of the military judge's essential findings.

Appellant first asserts that the military judge did not adhere to this R.C.M. 905(d) *Postle/Lilly* mandate, arguing that, while the judge made some essential findings relating to the the good cause prong of the *Durr/Lilly* analysis, he failed to address the second, nexus prong. More specifically, appellant argues that the military judge did not state whether a nexus existed between the ship's participation in READIEX and the delay in the trial proceedings. Appellate defense counsel further argues that this failure resulted in "substantial preju-

dice to the appellant." Appellant's Brief at 12.

As previously noted, the military judge did enter essential findings, stating both findings of fact and conclusions relating facts to the law. While he did not specifically cite to the *Lilly* or *Durr* case, our review of his essential findings indicates that he followed substantially both prongs of the requisite analysis when he stated that

> *[t]he delay in these proceedings was indeed caused by an unusual operational requirement and military exigencies.* The underway period of USS HOEL from 9 to 17 July 1987 was unusual and unexpected. Although deployment dates for combatant ships are always changing, the incident involving the USS STARK in the Persian Gulf precipitated these short notice changes in the schedule of USS HOEL. *The USS STARK incident occurred at a critical time in the progression of this case to trial.*

(Emphasis added.) Appellate Exhibit XXXIV, p. 3–4.

We do not believe that *Postle* or *Lilly* intended to establish a hard and fast rule that the military judge must state explicitly his findings in strict formalistic accordance with their two-tiered analytical framework. Rather, we believe that *Postle/Lilly* and R.C.M. 905(d) stand for the proposition that so long as the record demonstrates that the military judge applied the correct law to the facts, and that the facts he found are supported by the evidence of record, then his ruling should be upheld. In this case, the above-quoted statement of the military judge implicitly meets the R.C.M. 905(d) *Postle/Lilly* mandate.

■■■ We next address the primary question as to whether the military judge committed legal error in arriving at his decision denying appellant's motion to dismiss.[8] The evidence establishes that the

---

*United States v. Jones*, 21 M.J. 819, 821 (N.M.C. M.R.1985).

**6.** The specific issue addressed in *Butterbaugh*, concerned whether certain days were excludable under R.C.M. 707(c)(3). *See* 22 M.J. at 761.

**7.** R.C.M. 707(c)(9) was R.C.M. 707(c)(8) when *Lilly* was decided. *See* Exec. Order No. 12,586, 52 Fed.Reg. 7103 (1987).

**8.** It should be noted that *Harris* and *Butterbaugh, both supra*, were cases this Court heard

USS HOEL had been initially scheduled to deploy to the Western Pacific in December, some four to five months after the July date which had been announced for appellant's court-martial. Prior to appellant's trial, however, the ship's departure date was moved up to July. This earlier deployment schedule was precipitated by "two national events, one being the attack on the STARK and the other being the general situation in the deployment of forces worldwide on an unclass level." R. 36. This earlier schedule required that the preparation period prior to deployment be compressed. The HOEL's participation in READIEX was part of the preparation and, because of the compressed schedule, the ship was required to utilize the days in question, 9–17 July, for the exercise. Certainly, preparation for an ordinary operational schedule does not constitute a military exigency. *See United States v. Harris, supra.* The HOEL's schedule went beyond the ordinary, however, when its preparation period for deployment was substantially compressed and when the deployment preparation period required participation in READIEX, which in and of itself involved an intense and complicated schedule of events. Additionally, the STARK incident enhanced the intensity of the situation because it raised "a lot of different questions ... about composition of ships, who was equipped and who was not equipped to deal with an assignment in the Middle East, and as a result of those questions three of our ships, because of their weapons capabilities," (R. 43) were being considered for possible assignment. The HOEL was "[a] candidate for an earlier deployment ... and a candidate for the MISSOURI battle group at some point in time after that Monday [the day of the STARK incident]." READIEX was the "final exam" for any ship to be deployed to WESTPAC. The exercise determined whether the ships as a group could func-

tion as one for any engagement; it tested "the communications, the coordination, and the control of all of those elements to function smoothly...." R. 44. It would be difficult to imagine a better example of a peacetime military exigency or unusual operational requirement than a combatant ship facing an advanced and compressed schedule under the pressures of ensuring that its imminent deployment to a tense theater of operations would be accomplished without any question of its complete capability to support the force structure in that theater. We find that the evidence presented at trial supports the military judge's essential finding of fact that the period of delay caused by HOEL's deployment was for good cause. We specifically agree that the situation presented by the HOEL's advanced READIEX schedule in combination with the STARK incident was both a "military exigency" and an "unusual operational requirement" as defined in R.C.M. 707(c)(9).

■ Having found the military judge correct in ruling that the HOEL's nine day deployment constituted good cause for delay, we move on to determine whether he was correct in finding the existence of the nexus prong of *Postle/Lilly*. And, we do. Since the defense requested witnesses and documents were aboard the HOEL at sea and the defense believed it could not prepare or present a proper defense without those witnesses and documents, the military judge properly ruled that the Government had to comply with the R.C.M. 701 discovery request before the trial could proceed. Accordingly, a nexus between the HOEL's nine-day deployment and the delay in appellant's court-martial existed and was properly found by the military judge.

■ In sum, therefore, we concur with the military judge's findings that (1) the

as appeals by the Government pursuant to Article 62, UCMJ, 10 U.S.C. § 862. In an Article 62 appeal this Court is bound by the findings of fact entered by the military judge. We can only review the military judge's ruling to insure that it is based on matters contained in the record and is correct as a matter of law. *United States*

*v. Postle,* 20 M.J. 632 (N.M.C.M.R.1985). In the instant case, the issue is before us as a matter for review pursuant to our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c) and, therefore, no such limitation on our review authority applies.

Government was required to comply with the R.C.M. 701 request before it could proceed to trial; (2) the witnesses and documentary evidence requested by the defense were aboard the USS HOEL then at sea participating in READIEX; (3) the deployment of the HOEL was an unusual operational requirement and military exigency that was good cause for the nine-day delay in appellant's court-martial; and (4) the inability of the Government to comply with the defense request for witnesses and documents located aboard the HOEL at sea until after the HOEL's nine-day deployment prevented the court-martial from proceeding.[9] Finally, we concur that in light of the fact that the witnesses and documents aboard the HOEL were requested by the defense and apparently necessary for the preparation and presentation of its case, the balancing required by *Durr/Lilly* overwhelmingly tilts in favor of exclusion of the nine days under R.C.M. 707(c)(9). Accordingly, we find that the military judge did not err in denying the defense motion for dismissal of the charges for lack of speedy trial.[10]

Finally, we conclude that no error prejudicial to the substantial rights of the appellant was committed. Accordingly, the find-

9. Indeed, in addition to finding that the military judge properly ruled that the Government was required to meet the demands of the defense in accordance with R.C.M. 701, and that HOEL's participation in READIEX was the reason—the good cause—for the witnesses and documents not being readily available, we also concur with the military judge's implicit finding that the period of time the Government took in producing the witnesses and documentary evidence, *i.e.,* nine days, was reasonable. *See United States v. Cook,* 27 M.J. 212 (C.M.A.1988).

As trial and appellate counsel ably pointed out in their briefs and oral arguments, the law does, in many instances, place parties in situations that create, at the very least, tactical dilemmas for counsel. This case is no exception. For example, in order for the Government not to be held accountable for the period of delay it believed necessary for it to comply fully with R.C.M. 701, it had to either produce the witnesses and documentary evidence immediately and go to trial or it had to place the defense on notice of the period of delay that the Government anticipated would be required for it to comply with the defense R.C.M. 701 request, and if that delay was challenged, be prepared to justify the reasonableness of the delay.

On the other hand, the defense had to either persist in its R.C.M. 701 request and subject itself to a reasonable delay in the trial or it had to withdraw its request and proceed to trial. At the very least, if it chose to maintain its position with regard to its discovery request, and have any hopes of prevailing, the defense had to demand speedy trial and challenge, as unreasonable, the period of time the Government said it required for compliance with the R.C.M. 701 request. If it chose not to make a demand for speedy trial or not to challenge the delay, then the defense had to accept the availability status of those witnesses and documentary evidence at the time of the Article 39(a) session. In appellant's case the record supports the fact that many of the witnesses and the documentary evidence requested by the defense pursuant to R.C.M. 701 were aboard the USS HOEL at sea and participating in READIEX at the time of the 10 July Article 39(a) session. Additionally, as noted in the body of our opinion the HOEL's participation in READIEX required nine days, including the day of departure and the day of return. The defense neither demanded speedy trial nor challenged as unreasonable the period of delay required for the Government to comply with R.C.M. 701. We acknowledge that defense counsel in this case apparently was put on notice belatedly by the Government about the amount of anticipated delay its compliance with R.C.M. 701, *i.e.,* nine days, would require until the day of the Article 39(a) session. But, without evidence to the contrary, the record in this case, when read as a whole, is sufficient to support the military judge's implicit ruling that the delay of the nine days required for the Government's compliance with R.C.M. 701 was reasonable.

Being placed in a dilemma is most poignant when the party so placed tries to accomplish two irreconcilable goals or fails to establish its priorities. Both parties must be aware that while one issue, in this case *Cook,* may overlap with other issues in the case, such as the tests applicable for the interpretation of R.C.M. 707(c), the establishment of a proper and explicitly factual record on each issue is essential. *See United States v. Cook, supra,* at 215.

10. We would note here that we reiterate the statement by Judge Cox in *United States v. Carlisle,* 25 M.J. 426, 428 (C.M.A.1988):

Quite frankly, from the records we see, it appears as though some military judges, staff judge advocates, Naval Legal Service Office commanders, trial counsel, and defense counsel regard R.C.M. 707 as though it were a numbers game—where days are just added and subtracted, a day or two here or there, quibbling about this or that, blaming trial or

ings and sentence as approved on review below are affirmed.

Senior Judge COUGHLIN concurs.

RUBENS, Judge (concurring with reservations):

I generally concur in the lead opinion. I specifically disagree when it concluded that "[i]t would be difficult to imagine a better example of a peacetime military exigency or unusual operational requirement" than the USS HOEL's participation in READ-IEX. Although READIEX constituted an "unusual operational requirement and military exigency" within the sense of R.C.M. 707(c)(9), MCM, 1984, I do not believe that it was the best or even necessarily a good example. I also write separately to stress that while the government may lawfully use all of the time to which its entitled under R.C.M. 707(a) or (d), it is often not prudent to do so. The record of trial does not demonstrate that the government needed *all* the days it used. Thus, its prudence in processing the charges in this case is questionable. If the government had brought appellant to trial on day 78, for example, the READIEX would not have delayed the proceedings and the government would not have ever faced the risk of an adverse ruling by the military judge on the excludability of READIEX delay.

defense counsel, deciding later if the rule has been honored or broken. Implementing speedy trial rules in such a cavalier manner was never intended and is improper; it will simply not be tolerated.
*ON DAY NUMBER 1, EVERYONE ASSOCIATED WITH A CASE SHOULD KNOW WHAT DAY WILL BE NUMBER [90].*

*See also United States v. Cook, supra* at 213, wherein Judge Cox reiterated the mandate set forth in *Carlisle*. We get the distinct impression from the record of trial in this case, that the case was lost and was found only during the last days before the HOEL had to deploy. In other words, the case "was not prosecuted with a constant view towards day [90]."