## UNITED STATES

v.

**James R.T. CAMACHO, 586 74 4875, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 89 0651.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 9 Nov. 1988.

Decided 28 Feb. 1990.

---

Lt. J.A. Toliver, JAGC, USNR, Appellate Defense Counsel.

Maj. Laura L. Scudder, USMC, Appellate Government Counsel.

Before McLERAN, HILTON and RUBENS, JJ.

McLERAN, Judge:

Following provident pleas of guilty, a general court-martial with officer members sentenced appellant to a dishonorable discharge, confinement for 2 years, total forfeitures, and reduction to E-1, for two violations of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (carnal knowledge), and two violations of Article 134, UCMJ, 10 U.S.C. § 934 (indecent acts with a female under the age of 16). The convening authority approved the sentence as adjudged.

Before this Court, appellate defense counsel asserts that appellant was denied his right to a speedy trial. The issue was first raised at trial by a defense motion to dismiss. Briefly, the facts relevant to the speedy trial issue as determined by the military judge at trial are as follows:

| | |
|---|---|
| 29 June 1988 | Appellant placed on restriction |
| 30 June | Charges preferred |
| 17 August | Article 32 Investigation commenced; defense requests delay to interview witness |
| 26 August | Defense advises Investigating Officer (IO) to finish investigation |
| 26 September | IO commences emergency leave |
| 2 October | IO returns from emergency leave |
| 3 October | Report of Investigation submitted |
| 18 October | Charges served; trial date established as 8 November |
| 8 November | Arraignment, pleas and providence inquiry |

The military judge found that a total of 132 days had elapsed between the date restriction was imposed and arraignment. Nine days were excluded as accountable to the defense as a result of a requested delay, leaving the Government still accountable for 123 days. One of the points of contention at trial was the effect of the emergency leave of the Article 32, UCMJ, Investigating Officer (IO) on the computation of the elapsed days. In his findings on the record, the military judge determined that

on the 26th of September the investigating officer did not then have his investigative report ready to turn in. By his testimony, this would have been complet-

ed by the end of September, so I'm going to give as many days as possible to the defense and would find that Friday, the 30th of September would have been the date that he could have been expected to have completed his report but for the emergency leave.

In essence, the military judge excluded the emergency leave period of September 27, 28 and 29 from government accountability as falling under the "good cause" provision of Rule for Courts–Martial (R.C.M.) 707(c)(9), Manual for Courts–Martial, United States, 1984. As a result, he determined that a total of 12 days could be excluded from the 132–day period, leaving the Government accountable for 120 days of trial delay.

▬ We .agree with the military judge's finding that appellant's restriction to the limits of the base on 29 June 1988 triggered the 120–day speedy trial clock of R.C.M. 707(a)[1] as well as with his determination that the defense was accountable for 9 days of delay from 18 to 26 August as a result of a request for a delay to interview witnesses. Left for consideration is whether any other period is excludable from the remaining 123 days between the triggering event and the day appellant plead guilty.[2]

▬ We believe that the entire period during which the IO was on emergency leave is excludable from government accountability under the "good cause" provision of R.C.M. 707(c)(9) for reasons set forth below.

R.C.M. 707(c)(9) provides for the exclusion of "[a]ny other period of delay for good cause, including unusual operational requirements and military exigencies." In *United States v. Lilly*, 22 M.J. 620 (NMCMR 1986), Senior Judge Mitchell explained the good cause exclusion as "a rule

of balance, common sense and reason to be realistically applied in its military setting . . . ," and adopted a two-step analysis first espoused by Judge Kennett in *United States v. Durr*, 21 M.J. 576 (ACMR 1985).

First, the event which allegedly constitutes good cause must be analyzed to determine whether the event is of the type that may justify a delay. If so, the second inquiry is whether a nexus exists between the event and any delay in trial. *United States v. Durr*, 21 M.J. at 578.

The Court of Military Appeals has succinctly articulated the rule for determining accountability under R.C.M. 707:

(3) If the delay is occasioned by a specific request for a delay "for good cause" made in writing or on the record by the Government and the delay is granted by either the convening authority, the Article 32 investigating officer, or the military judge, such delay shall be excluded; provided, however, the grant for delay made by the convening authority or Article 32 investigating officer is subject to *de novo* review by a military judge upon motion of the defense. These exclusions are subject to review both for abuse of discretion and reasonableness.

(4) If "good cause, including unusual operational requirements and military exigencies" exists, even though not previously litigated or no delay was granted, the Government shall be relieved of accountability, subject to the test of reasonableness. R.C.M. 707(c)(9). The military judge has to find that the unusual event being relied upon actually caused a delay in the Government's preparation of its case and that it was reasonable for the delay to result. Once the causal connection between the event and the delay is established, the time may be subtracted from the 120–day limit. The Government need not establish, however,

---

1. *Cf. United States v. Facey*, 26 M.J. 421 (C.M.A. 1988).

2. As stated by the Court of Military Appeals, "[A]s we move along the time line . . . to trial, . . . we are looking at those events which qualify to exclude government responsibility, thus allowing trial beyond the 120–day limit imposed by the Commander-in-Chief". *United States v.*

*Longhofer*, 29 M.J. 22, 25 (C.M.A.1989). The 120–day clock stops ticking when a plea of guilty is entered or when the presentation of evidence on the merits begins. R.C.M. 707(b)(3). The date on which restraint is imposed does not count for purposes of computing time, while the termination date does count. R.C.M. 707(b)(1).

that this delay "proximately caused" the trial not to take place within the total time period.

*United States v. Longhofer*, 29 M.J. 22, 28–29 (C.M.A.1989). (Citations omitted.)

Does emergency leave (here, occasioned by the death of the IO's father-in-law) justify a delay? While the unfortunate underlying event is certainly not an "unusual operational requirement" or a "military exigency" as envisioned by the Rule, the plain language of the Rule suggests that other events may also establish "good cause." Prior cases have established that "good cause" does not contemplate delays which can normally be anticipated in preparation for trial.[3] Although death of a relative is certainly inevitable, we do not plan our day-to-day schedule around that possibility except in the most extreme situations where death is likely due to the nature of an illness or injury, and it is not unreasonable for a command to grant leave to any person under such circumstances.

Balanced against the humanitarian concern for relatives coping with the death of a loved one, of course, is the right of an accused to be brought to trial without undue delay. We believe that the balance tips toward favoring a delay for a reasonable period of time,[4] providing the defense case is not prejudiced as a result of the delay.

Left for determination under the *Durr* analysis is whether a nexus exists between the event and any delay in the trial. As restated by the Court of Military Appeals, there must be a causal connection between the event and the delay for the time to be excluded under R.C.M. 707(c)(9).[5]

■ Without question, other events *contributed* to the overall delay.[6] Appellant asserts that the delay in completing the report was caused by the IO's gross negligence, rather than by the death of a family member. While we agree that apparently no one associated with the processing of the charges in this case knew "what day [would] be number 120,"[7] the Government is not required to process a case as fast as possible, only within the time-frames required by the Constitution, the Uniform Code of Military Justice (UCMJ), the Manual for Courts–Martial, and case law. Similarly, the Government does not have to prove that but for the event it would necessarily have gone to trial sooner. *United States v. Jones*, 21 M.J. 819 (NMCMR 1985). Obviously, the report in this case *could have been* completed much sooner, but that is not the test to be applied. Here, the causal connection (nexus) between the emergency leave and the delay is clear.

The duration of the leave was reasonable considering the reason for the leave and

---

3. *United States v. Kuelker*, 20 M.J. 715 (NMCMR 1985). *See, e.g., United States v. Honican*, 27 M.J. 590 (ACMR 1988) (delay in forwarding charges while awaiting fingerprint reports); *United States v. Cook*, 23 M.J. 882 (AFCMR 1987), pet. granted in part 26 M.J. 56, rev'd 27 M.J. 212 (C.M.A.1988) (delay in producing prosecution witnesses), *United States v. Kuelker*, 20 M.J. 715 (NMCMR 1985) (delay in obtaining essential items of evidence in custody of Treasury Department).

4. *United States v. Longhofer*, 29 M.J. 22 (C.M.A. 1989).

5. *United States v. Longhofer*, 29 M.J. 22, 27 (C.M.A.1989).

6. The IO did not know there was a speedy trial problem, but did know appellant was not confined. Once notified that the defense no longer needed a continuance, the Article 32 investigative report was given low priority because the

legal assistance office where the report apparently was supposed to be prepared was short-handed and the IO was concentrating on legal assistance activities. He was planning to do the report toward the end of September (approximately a month after being notified by the defense that the investigation could proceed), but his father-in-law died and he commenced emergency leave. About the time his leave commenced he realized that the report "needs to be done ASAP upon my return." The report was completed on 3 October 1988, the day following his return from leave. Other than the pre-printed fill-in-the-blank Investigating Officer's Report, the final report consisted of copies of four documents (not counting the appointing order), a ten-page verbatim transcript of testimony of one witness, and a seven-word unsworn statement of appellant—certainly not a burdensome report to assemble.

7. *United States v. Carlisle*, 25 M.J. 426, 428 (C.M.A.1988).

appellant's case was not prejudiced as a result of the delay. We hold that the entire 6–day period during which the IO was on emergency leave constituted "good cause" under R.C.M. 707(c)(9), and should have been excluded from government accountability for bringing appellant to trial within 120 days under R.C.M. 707(a). The resulting 6–day exclusion reduces the government accountable delay to 117 days, less than the 120 days permitted under R.C.M. 707(a).

Accordingly, the findings of guilty and the sentence, as approved on review below, are affirmed.

Judge HILTON and Judge RUBENS concur.