# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Senior Airman ANTHONY S. LEE
## United States Air Force

## ACM S32066

## 30 April 2014

Sentence adjudged 3 May 2012 by SPCM convened at Hill Air Force Base, Utah. Military Judge: Jeffrey A. Ferguson and Natalie D. Richardson (*Dubay* hearing).

Approved Sentence: Bad-conduct discharge, confinement for 4 months, forfeiture of $994.00 pay per month for 4 months, and reduction to E-1.

Appellate Counsel for the Appellant: Major Matthew T. King; Major Grover H. Baxley; and Captain Andrew D. Tharp.

Appellate Counsel for the United States: Gerald R. Bruce, Esquire; Major Daniel J. Breen; Captain Matthew J. Neil; Captain David O. Ennis; and Captain April E. Cobb.

Before

ROAN, HARNEY, and MARKSTEINER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

MARKSTEINER, Senior Judge:

The appellant was convicted, contrary to his pleas, by a panel of officer and enlisted members of assaulting and threatening his wife in violation of Articles 128 and 134, UCMJ, 10 U.S.C. §§ 928, 934. He was sentenced to a bad-conduct discharge, confinement for 4 months, forfeiture of $994.00 pay per month for 4 months, and reduction to E-1. The convening authority approved the findings and sentence as

adjudged, waiving mandatory forfeitures for the benefit of the appellant's dependent child pursuant to Article 58b, UCMJ, 10 U.S.C. § 858b.

Pursuant to an order by this Court, a post-trial hearing was conducted on 28 February 2014 in accordance with *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967).

*Background*

At trial, the members found the appellant choked and then head-butted his wife, NL, in the face during an argument in their off-base home on 14 May 2011. They also found that on 20 May 2011, he pushed NL up against a doorframe as she was trying to exit their bedroom, leaving a bruise on her thigh; when NL ran outside, he followed and told her, "I'm going to kill you." Finally, during an argument at the home of EF on 2 July 2011, the appellant threatened NL by asking her, in the presence of EF and EF's husband, "Do you want another broken bone?"

Charges against the appellant were referred to a special court-martial on 14 February 2012 and were served on him the following day. The record does not specify the date on which Captain (Capt) F, the Area Defense Counsel (ADC) assigned to Hill AFB, Utah, initially undertook the appellant's representation, but it is clear he was so engaged as of late May 2012.[1] Capt F first learned that the appellant had hired CP, a civilian counsel practicing in Utah, on 21 February 2012.[2] According to Capt F, during an ensuing conference call between the appellant, Capt F, and CP, CP "made clear that he was 'lead' attorney and that he would be handling all matters in this case."

At first, the appellant "had a good feeling" about CP. CP met and conferred with the appellant several times prior to trial. However, about two weeks before trial, CP's son suffered a serious, potentially life-threatening head injury. The crux of the appellant's argument is that CP's preoccupation with his son's injury in the days leading up to trial—and during the trial itself—left him unprepared, and "mentally checked out" during the proceeding, resulting in material prejudice to the appellant's right to effective assistance of counsel.

*Assignment of Error*

The single issue the appellant now raises for our consideration is whether he received ineffective assistance of counsel (IAC), citing several alleged deficiencies in his counsels' performance at trial.[3] CP is acknowledged to have been the lead counsel on the

---

[1] The record of trial contains Captain (Capt) F's written confirmation of receipt of the Staff Judge Advocate's Recommendation. The transmission memo is dated 30 May 2012, and Capt F's receipt is dated 1 June 2012.

[2] Capt F's affidavit identifies this date as 2013, but this is an obvious typographical error.

[3] The issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

case, and the appellant focuses his claims on CP's performance. He alleges that CP's pre-trial preparation was ineffective because he failed to interview a number of potential witnesses and that his in-trial representation was ineffective because he was distracted as a result of a head injury his son had sustained shortly before trial. He cited as an example of CP's inattentiveness the fact that he appeared to have abandoned his efforts to impeach a witness simply because he was too tired to do so.

Prior to trial, the appellant recommended CP contact KS and EF, who could present potentially exculpatory testimony at the appellant's trial. KS was a marriage counselor who, according the appellant, would testify that NL had previously admitted to being the aggressor in physical altercations that took place between them, during which she struck the appellant with her fists. Such testimony could have been relevant and material to a potential self-defense argument by the appellant. EF, according to the appellant, could potentially provide statements inconsistent with the victim's version of at least one of the alleged assaults. KS and EF were among the numerous affiants who said, contrary to CP's post-trial declaration answering the ineffectiveness allegations, that CP never contacted them pre-trial.

At trial, EF testified about incriminating admissions the appellant had made following the 14 May 2011 assault. On cross-examination, CP referenced a written statement EF prepared regarding what she had observed that night. The substance of CP's questions indicated his intent to impeach EF with a prior inconsistent statement, presumably contained within that document. However, when asked by the assistant trial counsel to see the document, CP discontinued that line of questioning and moved to another topic. Capt F described the exchange above as follows:

> During trial I recall [CP] abandoning his attempt to impeach a Government witness. When Trial Counsel asked to see the document [CP] was going to hand a testifying witness, he walked from the area of the witness stand to the Prosecutions [sic] table, a length of approximately 20 feet. I do not recall him ever explaining why he abandoned the impeachment but I vividly recall him stating during trial, "…I've walked all the way back over here." This statement along with his large size, demeanor, and audible sigh gave the appearance that he did not change his mind on purpose but instead became exhausted for [sic] having walked back and forth.

In his second affidavit, CP answers this allegation noting he had become "somewhat frustrated with the cross examination because the benefit [he] was expecting to get from the cross examination was minimal in light of the actual written statement . . . in conjunction with [EF's] testimony." He explained that he opted instead to refer to the statement to demonstrate that EF neglected to report a known incident of domestic violence despite her awareness of her obligation to do so, and that he took this approach in an effort to call her veracity into question.

We ordered the *Dubay* hearing to resolve factual inconsistencies between the appellant's and CP's post-trial affidavits, and to resolve questions about his in-court representation of the appellant.

*Dubay Hearing*

At the *Dubay* hearing, the military judge considered fourteen affidavits submitted by the appellant's counsel, wherein each affirmed, according to the best recollection and belief of the affiant, that CP had not contacted him or her prior to the appellant's trial. The appellant's counsel called JS, EF, and KS, all three of whom testified that CP had not contacted them prior to the trial. Government counsel called CP who, referring to notes he said he made contemporaneously with phone calls he made to the potential witnesses, testified that he had spoken to all three, and all but one of the other affiants who denied ever speaking with him pre-trial.

Regarding the inconsistencies between the numerous affidavits and in-court testimony concerning pre-trial contact, the military judge noted:

I did not find that any of the witnesses at the hearing lied, although their testimony was internally or externally inconsistent. They either were mistaken or, more often, simply could not remember what happened. . . . Mrs. K-S's memory seemed particularly poor, including internal consistencies [sic] regarding releases to talk about therapy sessions, and she too needed notes to try to remember.

Addressing the inconsistencies between CP's testimony and appellant's numerous affidavits contradicting his version of events, the military judge continued:

None of [CP]'s contact with witnesses or potential witnesses before trial was in person; it was telephonic. Based on the conversations [CP] remembers, he gave them little reason to find the conversation memorable. For example, he talked to [CR] about the existence of any additional supplemental reports, not about the facts continued in the report. I gave less weight to the declarations of those not subject to examination at the hearing.

*Analysis*

We "are generally inclined to give [a military judge's] findings deference, so long as they are adequately supported by the evidence of record." *United States v. Ellis*, 54 M.J. 958, 964 (N.M.C.M.R. 2001) (citations omitted); *United States v. Ruhling*, 28 M.J. 586, 592 (N.M.C.M.R. 1988). In the context of a *Dubay* hearing, we give

deference to the findings of fact made by a military judge where such findings are not clearly erroneous and are supported by the record. *See e.g., United States v. Luke*, 69 M.J. 309 (C.A.A.F. 2011); *United States v. Diaz*, 61 M.J. 594 (N.M. Ct. Crim. App. 2005).

We review ineffective assistance of counsel claims de novo. *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001) (citing *United States v. Wean*, 45 M.J. 461, 463 (C.A.A.F. 1997)).

An accused has a constitutional right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). Before any relief is warranted on appellate review because of ineffective representation, an appellant must show his counsel's performance was deficient and that the deficient performance prejudiced the outcome of the case. *Id*. Appellate courts give great deference to trial defense counsel's judgments, and "presume[ ] counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Morgan*, 37 M.J. 407, 409 (C.M.A. 1993). Tactical decisions will not be second-guessed. *United States v. Sanders*, 37 M.J. 116, 118 (C.M.A. 1993), *cert. denied*, 510 U.S. 1010 (1993). In *United States v. Scott*, 24 M.J. 186 (C.M.A. 1987), the Court of Military Appeals applied the rules announced by the United States Supreme Court for testing whether an accused received the effective assistance of counsel. *See Strickland*. In *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991), the court articulated a three-part analysis to resolve claims of ineffective assistance of counsel:

> 1. Are the allegations made by appellant true; and, if they are, is there a reasonable explanation for counsel's actions in the defense of the case?

> 2. If they are true, did the level of advocacy fall[ ] measurably below the performance . . . [ordinarily expected] of fallible lawyers?

> 3. If ineffective assistance of counsel is found to exist, is . . . there . . . a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt?"

(citations and internal quotation marks omitted) (alterations in original).

Having reviewed the record of trial, the record of the *Dubay* hearing, all appellate filings admitted to date, and having accorded due deference to the wide range of decisions that may be considered reasonable for a trial defense counsel, we do not find trial defense counsel's conduct to have been ineffective.

While the written record may give us pause to question the *Dubay* hearing military judge's rationale for dismissing the inconsistencies between CP's testimony and the

affidavits contradicting his testimony, she nevertheless made specific findings of fact based on her in court observation of the witnesses. We decline to second-guess those findings and conclusions. We therefore find trial defense counsel's stated explanations for CP's actions before and at the appellant's trial to have been reasonably explained and that his actions did not fall measurably below the performance ordinarily expected of fallible lawyers. *Polk*, 32 M.J. 150.

That having been said, we take this opportunity to remind trial defense practitioners that when reviewing claims of ineffective assistance, "we decline to address the conduct of [an] appellant's two lawyers separately or judge appellant's complaints based only on [one or the other's] performance. 'Where an accused is represented by both civilian counsel and detailed military counsel, the performance of defense counsel is measured by the combined efforts of the defense team as a whole.' Accordingly, we evaluate the performance of the defense team as a unit for each of appellant's claims." *United States v. McConnell*, 55 M.J. 479, 481 (C.A.A.F. 2001) (quoting *United States v. Boone*, 42 M.J. 308, 313 (C.A.A.F. 1995)). The essence of effective assistance of counsel is the right to be represented by lawyers who are functioning as advocates during all stages of the adversarial process. *United States v. Cronic*, 466 U.S. 648, 656 (1984). In the case now before us, Capt F's post-trial affidavit so much as states that he showed up on the day of the appellant's trial without knowing who CP had or had not spoken to prior to trial and noting that he was "shocked" to learn after trial that CP had never interviewed the victim.

CP was acknowledged to have been the "lead counsel" on the case. Similar arrangements are likely not uncommon when a civilian counsel is retained to defend a military member. However, although such arrangements surely allow for attorney members of a trial defense team to sensibly apportion work in a way that best serves the client, such agreements should not be understood to sever the overarching, shared responsibility of a criminal accused's representation into neatly disconnected components, such that the right hand need not know what the left hand is doing.[4]

*Appellate Delay*

Though not raised as an issue on appeal, we note that the overall delay of more than 540 days between the time this case was docketed with the Air Force Court of Criminal Appeals and completion of review by this Court is facially unreasonable. Because the delay is facially unreasonable, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and

---

[4] We do not suggest that smart divisions of labor are improper or unwise. However, irrespective of whether a civilian counsel is designated "lead" in the defense of a military member tried by court-martial, the detailed military counsel shares responsibility for the client's effective representation throughout the process.

(4) prejudice." *United States v. Moreno*, 63 MJ. 129, 135 (C.A.A.F. 2006) (citations omitted).

This case was tried on 3 May 2012 and filed with our court on 28 June 2012. The appellant requested, and was granted, numerous extensions of time (EOT) to file his initial assignment(s) of error. The appellant filed his first EOT on 21 December 2012, after all but the bad-conduct discharge portion of his sentence had been executed. That EOT and another six were requested and ultimately granted. On 28 June 2013, the Panel 3 Senior Judge, and author of this opinion, held a status conference with counsel representing the Government and the appellant and directed that no extensions beyond 10 days from the date of that conference would be granted. The appellant's counsel submitted his initial assignment of error on 11 July 2013.

After receiving the appellant's IAC-based assignment of error, on 5 August 2013 the Government requested this Court to order the appellant's military trial defense counsel to provide an affidavit answering the IAC allegation, which we granted on 5 September 2013. The Government submitted the affidavit from appellant's military trial defense counsel on 21 November 2013. On 8 November 2013, the Government also requested that we issue an order to the appellant's civilian trial defense counsel to submit an affidavit in response to the appellant's IAC allegations. In that motion, the Government explained that it had, on three occasions between August and November 2013, requested CP to voluntarily submit his affidavit and believed he would do so. However, after CP's repeated failures to respond, the Government believed an order would be required to generate a response from him; accordingly, we issued such an order. CP provided his declaration on 30 December 2013, and the Government submitted it the following day. In that affidavit, CP identified numerous witnesses he spoke with prior to the appellant's trial.

On 7 January 2014, the appellant, through counsel, submitted an affidavit from EF, who represented, in pertinent part, that "[p]rior to the court-martial, [she] was not interviewed by [CP] nor his staff," a factual assertion conflicting with paragraph 4.I. of CP's affidavit wherein he represented that he had "personally spoke[n] with [EF] prior to, and in preparation for trial." On 8 January 2013, this Court ordered the record of trial in the appellant's case returned to the The Judge Advocate General for referral to an appropriate convening authority for the purpose of conducting a *Dubay* hearing, the record of which was to be returned to this court no later than 7 March 2014. The *Dubay* hearing was conducted on 28 February 2014, and the record was returned to this Court shortly thereafter.

The appellant has not asserted his right to timely appellate resolution of his case, or otherwise requested expedited review.

There is no evidence or assertion of any prejudice owing to the delay in issuing this decision on the appellant's appeal in this case. Having applied the *Barker* factors to the appellant's case, we find that although the delay was facially unreasonable, the appellant suffered no prejudice. *See Moreno*, 63 M.J. at 135-36. Having also weighed the "non-exhaustive" list of factors to consider when evaluating processing delay under Article 66(c), UCMJ, 10 U.S.C. § 866, we also find relief in this case is not warranted. *See United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002).

## *Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are

AFFIRMED.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM S32066